## GREAT NORTHERN RY. CO. v. LOONAN LUMBER CO.

Under the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) a court has not the power, in the first instance, to inquire into the reasonableness of a rate regularly established by a carrier and filed with the Interstate Commerce Commission and published, but whether or not a rate is reasonable is, in the first instance, for the Commission.

Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3155]) § 4, makes it unlawful for a carrier to charge greater compensation for a shorter than for a longer haul, under substantially similar circumstances, except that upon application to the Commerce Commission a carrier may, in special cases, be authorized to charge less for longer than for shorter distances, and the Commission may from time to time relieve such carrier from the operation of the section. **Held,** in an action by a carrier to recover a greater rate for a shorter than for a longer haul, an answer alleging that there existed no reason, by way of the peculiar geographical position, competition, or trade or other condi-

tions why a greater charge should be made for the shorter haul, stated facts showing that the rate was illegal and not recoverable.

(Opinion filed, March 9, 1910.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by the Great Northern Railway Company against the Loonan Lumber Company. From an order overruling a demurrer to the answer, plaintiff appeals. Affirmed.

*C. H. Wisnor* and *W. F. McNaughten,* for appellant.

It is the duty of the carrier of an interstate shipment to collect the rate named in the filed tariff, even though the Bill of Lading names a different rate, and although the · state law where delivery is made imposes a penalty against the road for the failure to deliver goods on tender of the rate named in the Bill of Lading. Gulf, C. S. & F. Railroad Co. v. Hefley and Lewis, 158 U. S. 99. The rate contained in the filed tariffs must be collected. Texas & Pacific Railway Co. v. Mugg, 202 U. S. 241. A shipper cannot maintain an action against a common carrier to obtain relief from an alleged unreasonable freight rate exacted from him for an interstate shipment without reference to any previous action by the Interstate Commerce Commission, where such rate has been filed with that Commission and promulgated as provided by the Act to regulate commerce, and is the rate which it is the duty of the carrier under that Act to enforce against shippers until changed in accordance with the provisions of that statute, since the independent right of an individual originally to maintain actions to obtain pecuniary redress for violations of the Act conferred by section 9 (24 Stat. L. 382, Chap. 104, U. S. Comp. Stat. 1901, p. 3159), must be confined to such wrongs as can, consistently with the context of the Act, be redressed without previous action by the Commission, and the provision of section 22 that nothing therein shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies; cannot be construed as continuing in shippers a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the statute. Texas & P. Ry. Co's v. Abeline Cotton Oil Co., 51 Law Ed. 553.

*Bailey* & *Voorhees,* for respondent.

The appellant had no right to charge a higher rate for the transportation of a car of coal from Chicago via Minnesota Transfer to Jasper than from Chicago via Minnesota Transfer and Jasper to Sioux Falls, and any higher rate was illegal and could not be legalized by publishing or filing any schedule of local rates with the interstate commerce commission. Under section 6 of the Interstate Commerce Act a carrier is obliged to publish its schedule of rates and must also file the same with the Interstate Commerce Commission. No rate can legally be charged until after the schedules have been so published and filed. Section 4 of the Interstate Commerce Act is as follows: "Sect. 4. That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier within the terms of this act to charge and receive as great compensation for a shorter as for a longer distance; *Provided, however,* That upon application to the Commission appointed under the provisions of this act, such common carrier may, in special cases, after investigation by the Commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property; and the Commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section of this act.

WHITING, P. J.  This cause is before us upon an appeal from an order overruling a demurrer to defendant's answer. The complaint sets forth that both parties are corporations; that defendant caused a car load of coal to be delivered to the Wisconsin Central Railway Company at Chicago for shipment by said company to Minnesota Transfer, to be there delivered to a connecting carrier and forwarded by such connecting carrier to Sioux Falls, S. D.; that said car load was so billed when delivered at Chicago; that the said coal was carried to Minnesota Transfer and de-

livered to plaintiff to carry to Sioux Falls; that such carriage by both companies was to be at regular published tariff rates; that such car of coal was received by plaintiff to be carried by it for a consideration, to wit, its proportionate share of the filed and published through tariff rate from Chicago via Minnesota Transfer to Sioux Falls; that when said shipment had reached a division point on plaintiff's line between Minnesota Transfer and Sioux Falls its destination was changed by order of defendant and the shipment diverted to Jasper, Minn., a point on plaintiff's line between such division point and Sioux Falls; that there is no through tariff rate between Chicago and Jasper for freight originating on said Wisconsin Central Company's line; that the regularly published tariff schedule and the only schedule for coal between such points as filed with the Interstate Commerce Commission and posted in the depots of the two railway companies was the local rates on Minnesota Transfer; that according to such rates the total charge for shipping said car would be $134.30; that plaintiff has paid the Wisconsin Central in full for such shipment; that defendant has paid no part of above $134.30 except $79, and that $55.30 remains due and unpaid, and defendant refuses to pay same—wherefore, plaintiff prays judgment for said $55.30 and interest. The answer admits all the allegations of the complaint except that defendant denies owing anything to plaintiff. The answer sets forth that Jasper is some 30 miles nearer Minnesota Transfer than is Sioux Falls; that freight from Minnesota Transfer to Sioux Falls over defendant's line must pass through Jasper; that there exists no reason, "by way of the peculiar geographical position, competition of other transportation facilities or trade or other peculiar conditions, why a greater charge should be made for transporting coal from Minnesota Transfer or from Chicago via Minnesota Transfer to Jasper than is made for the transportation of such coal from Minnesota Transfer or from Chicago via Minnesota Transfer to Sioux Falls, and that the regular tariff rate on coal from Chicago to Sioux Falls via Minnesota Transfer was a just, reasonable and sufficient tariff on coal from Chicago to Japser via Minnesota Transfer;" that the defendant paid plaintiff $79 in full

satisfaction of plaintiff's charges for such shipment; that said $79 was received in full satisfaction thereof and a receipt therefore was given; that said $79 was the full tariff rate from Chicago to Sioux Falls via Minnesota Transfer and Jasper. The demurrer alleges that such answer upon its face, does not make denials and allegations sufficient to constitute a counterclaim or defense.

It is appellant's contention: (1) The only lawful rate that can be received by the carrier and paid by the shipper is the tariff rate filed, published and posted in accordance with the federal laws regulating interstate commerce. (2) The courts have no jurisdiction to grant relief to an individual shipper in advance of a change in the filed tariffs for an alleged unreasonableness in rates or violation of the long and short haul clause of the act. (3) An accord and satisfaction on the filed and published rate is unlawful, for it is prohibited and penalized by the act.

We think the last proposition is so well established that it needs no consideration by us, and that therefore the taking of the $79 and giving receipt in full cannot be considered in any manner as a defense unless it is the full amount that could legally be collected. We are also fully satisfied that under the provisions of the interstate commerce act (Act. Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), as interpreted by the United States Supreme Court, no court has any power, in the first instance, to inquire into the reasonableness of any rate that has been regularly established by a railway company and filed with the Interstate Commerce Commission and published by posting; that this question of whether or not a rate is reasonable and just is one to be determined in the first instance in a proper proceeding before the said Interstate Commerce Commission (Texas, etc., R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Am. & Eng. Ann. Cas. 1075) and this is conceded by respondent in its brief. There certainly can be no question at this late date but that the first proposition above stated is true. Gulf C., S. & F. Railroad Co. v. Hefley et al., 158 U. S. 99, 15 Sup. Ct. 812, 39 L. Ed. 910; Texas, etc., v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011.

Respondent contends, however, that there is 'another question involved here; that having alleged that there exists no reason, by way of the peculiar geographical position, competition of other transportation facilities or trade or other peculiar conditions why a greater charge should be made for the shorter than the longer haul, and this being admitted by the demurrer—there is an admission of facts establishing that the rate attempted to be charged to Jasper is unlawful ab initio—and that the provisions for filing schedules, and making them when filed binding on both carrier and shipper, has no application to rates per se unlawful. Section 4 of the Interstate Commerce Act reads as follows: "Sec. 4. That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier within the terms of this act to charge and receive as great compensation for a shorter as for a longer distance; provided, however, that upon application to the Commission appointed under the provisions of this act, such common carriers may, in special cases, after investigation by the Commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property; and the Commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section of this act."

It will be seen that respondent's position is in direct conflict with that part of appellant's second proposition above stated, namely, that the court has no jurisdiction to grant relief to a shipper for a violation of the long and short haul clause of the act, in advance of action thereon by the Interstate Commerce Commission. Appellant places the question of relief under the long and short haul clause on exactly the same basis as where relief is sought under section 1 of the same act, which section provides that all charges shall be reasonable and just, and that

every unjust and unreasonable charge is prohibited and declared to be unlawful. The precise question here raised does not seem to have ever been passed upon by the federal courts, nor, so far as we are advised, by the court of last resort of any state, and therefore we can look to the decisions of the other courts to assist us only in so far as in treating other features of this federal law their reasoning thereon may seem applicable hereto.

We believe that this cause must be considered just the same as if the two railway companies had filed and published a through rate from Chicago to Jasper, without having applied to the Commission, under the last part of section 4, for leave so to do, and this through rate so established was greater than that from Chicago to Sioux Falls. There can be no question, under the authorities, but that, in this case, no action could be brought in this court based on the charge that the short haul rate was unreasonable, but that resort would first have to be had to the Commission for it to review the rate filed. It becomes important, then, to see why the courts have held that no such action could be brought, and to see if the same reasons would necessitate a holding that the question of short haul rate being unlawful could not be determined, in the first instance, by a court, but must be referred for such determination to the Commission. The Commission itself, while always jealous of its rights under the law, early held that, under the first part of said section 4—it not being made unlawful to fix a greater rate for short haul than long one, where difference in "circumstances and conditions" authorized it —the carrier could fix such rate where the different "circumstances and conditions" authorized it and do this without first applying to the Commission for leave. The Commission, in the matter of Trammel v. Clyde Steamship Co., 4 Interst. Com. R. 122, held "The carrier has the right to judge, in the first instance, whether it is justified in making the greater charge for the shorter distance under the fourth section in all cases where the circumstances and conditions arise wholly upon its own line through competition for the same traffic with carriers not subject to regulation under the act to regulate commerce. In other cases

under the fourth section the circumstances and conditions are not presumptively dissimilar and carriers must not charge less for the longer distance except upon the order of this Commission." It will thus be seen that the Commission gave a restricted interpreation to the phrase "under substantially similar circumstances and conditions," thus indicating that they considered that under the phrase "in special cases" the Commission could grant permission to carrier to establish a greater short haul than long haul rate, where the "circumstances and conditions," would not have justified the carrier to do so in the first instance. But the United States Supreme Court has overruled the above holding of the Commission, and holds that "circumstances and conditions" includes any and all competition. Interstate Com. Com. v. Alabama M. R. Co., 168 U. S. 144, 18 Sup. Ct. 45, 42 L. Ed. 414; East Tenn., V. & G. Ry. Co. et al. v. Interstate Com. Com., 181 U. S. 1, 21 Sup. Ct. 516, 45 L. Ed. 719. We are thoroughly convinced that the only proper construction of this whole section is to hold that the phrase "in special cases" was intended to mean the same as cases not "under substantially similar circumstances and conditions," and this leaves the last half of section 4 an absolute dead letter—except as to the power therein given to review rates already established—if carriers, under the first part of such section, can establish rates which regardless of the question of difference in "circumstances and conditions," will be in full force and effect as against both shippers and carriers until set aside by the Commission, because, under such interpretation, no carrier would ever apply, in the first place, to the Commission for authority to establish a greater rate for short than long haul. We certainly should, if possible, so interpret this section as to give some effective force to every part thereof.

Justice Shiras speaking for the court in the case of Interstate Commerce Commission v. Alabama M. R. Co., supra, says: "As the third section of the act, which forbids the making or giving any undue or unreasonable preference or advantage to any particular person or locality, does not define what, under that section, shall constitute a preference or advantage to be undue or unreasonable, and as the fourth section, which forbids the charging

or receiving greater compensation in the aggregate for the transportation of like kinds of property for a shorter than for a longer distance over the same line, under substantially similar circumstances and conditions, does not define or describe in what the similarity or dissimilarity of circumstances and conditions shall consist, it cannot be doubted that whether, in particular instances, there has been an undue or unreasonable prejudice or perference, or whether the circumstances and conditions of the carriage have been substantially similar or otherwise, are questions of fact depending on the matters proved in each case." Justice Shiras delivering the opinion for the United States Circuit Court in the case of Van Patten v. C., M. & St. P. Ry. Co. (C. C.) 81 Fed. 545, discussed very fully the reasons that control the court in holding that it was not the intention of Congress to leave the question of reasonableness of rates to the uncertainty of jury decisions. In concluding his discussion, among other things he says: "If the contention of plaintiff be sound, every schedule of rates posted by carriers under the provisions of the act should have attached thereto the memorandum 'Subject to change in accordance with the verdicts of juries which may hereafter be rendered.'" It can be argued with much show of reason that this same uncertainty, resulting from varying verdicts of juries, precludes any construction of section 4 that will leave question of difference in "circumstances and conditions" to be determined by juries; but Justice Shiras in the above opinion, after calling attention to the many divers things that must be taken into consideration in determining the reasonableness of a rate—matters beyond the possibility of proper measurement and weighing except by persons peculiarly qualified—said: "It is contended, however, on part of plaintiff, that as the first section of the act declares that the rates charged must be reasonable, and as section 8 declares that the carrier shall be liable to any person injured for the damages resulting from the doing of any act or thing prohibited, it is open to the plaintiff to now show that the schedule rates charged and paid without demur during the past five years were unreasonable; and that, if this be not so, then the provisions of the act providing the right to sue for and recover damages

for violation of the act are meaningless. If the carrier, after adopting, printing, and posting the schedule of rates as required by the act, should charge or exact from a shipper in any form or by any devise a rate greater than that fixed in the schedule, an action for damages would be maintainable, and in such case there would be no difficulty in defining the rule of damages, to-wit, the difference between the schedule rate and that actually exacted. So, also, if the schedule on its face provided for the imposition of unfair and inequitable rates—as, for instance, if it should require the payment of a greater charge for the transportation of freight for a shorter than for a longer distance, other things being equal—an action might be maintained, and in that case a rule of damages could be based upon the provisions of the schedule itself, by taking the schedule rate for the longer distance as the basis for determining what the proper rate for the shorter distance should be." This whole act is based upon the theory that competition at competing points, will, by the natural results flowing therefrom, fix the lowest rates at competing points that are reasonable, which rates so fixed voluntarily by the carrier can be taken as a basis for fixing rates at other points, and that such competing rates shall control unless it can be established that, owing to different "circumstances and conditions," it is reasonable to allow a greater charge for hauls to noncompeting points.

This phrase "under substantially similar circumstances and conditions" is found in section 2 of the same act which reads as follows: "Sec. 2. That if any common carrier subject to the provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered or to be rendered in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects, or receives from any other person or persons for doing for them a like and contemporaneous service in the transportation of a like kind of traffic, under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which 's hereby prohibited and declared to be unlawful." The right to

bring action and submit to the jury the question of similarity of "circumstances and conditions" seems to be recognized by the federal courts in the case of Kinnavey v. Terminal R. Ass'n of St. Louis (C. C.) 81 Fed. 802. This was an action brought by a shipper against a railway company to recover part of the charges that had been paid by the shipper to such company for shipments made. The petition charged not only that the rates were unreasonable and unjust, but further that they were different from and greater than rates charged to and collected from another company, for shipments made of same commodity "under substantially similar circumstances and conditions," and that such charges against the plaintiff were an unjust discrimination and in violation of said section 2. A demurrer was interposed to the complaint and sustained so far as the claim of unreasonableness of rate was concerned. The court held that this came under section 1 of the act, and that under such section the rate filed is presumed to be reasonable, and therefore no cause of action was stated without alleging that such rate charged was greater than the rate filed; but the court held that the complaint was sufficient under section 2 wherein it alleged a charge of different rates "under substantially similar circumstances," thus holding that there could go to a jury for determination not only the question of the shipments and rates charged therefor, but also the question as to whether the shipments were "under substantially similar circumstances." The court says that this right of action under such section 2 is not affected by the question as to whether the rate charged plaintiff was reasonable; that the question of reasonableness is not necessarily involved in question as to whether there is an unjust discrimination. So, in case at bar, it is not a question as to whether the rate charged from Chicago to Jasper is reasonable, but solely a question as to whether it is lawful, and its being lawful, in view of the lower rate from Chicago to Sioux Falls, depends, under section 4, on either one of two things; either on the fact that the Commission has authorized it, or, where there has been no action on part of Commission, it depends on the fact that shipments to Jasper are under substantially dis-similar conditions from those to Sioux Falls. Plaintiff by its

demurrer admits facts that render the rate to Jasper unlawful, and it has wholly failed to allege facts bringing its claimed rate under the exception provided for by latter part of section 4. The answer herein not only states facts showing the rate claimed to be unlawful, but such facts are facts which under the law could be submitted for determination to a jury in an action of this nature.

In conclusion we would state that in construing section 4 in connection with the whole law, it should be held that when, under the first part of said section, any carrier or carriers have fixed a rate for short haul greater than for long, without first obtaining authority from the Commission, such rate is left. open to attack by any party feeling aggrieved, which attack can be made, in a proper case, by direct action to recover unlawful charges paid, leaving to the jury, not the fixing of what is a reasonable rate, but solely the determination of the fact of the existence or non-existence of "practically similar circumstances and conditions." If the jury determine that the "circumstances and conditions" render the short haul rate unlawful, the carrier shall only be entitled to recover or retain the long haul rate; that when the carrier has fixed his short haul rate by virtue of authority received from the Commission such rate can only be questioned by proceedings brought in the first place before such Commission. Such construction gives life to the whole of section 4, and is in harmony with the decisions of the federal courts on analogous matters. Under this view the respondent has a complete defense if he can prove the allegations of his answer, no question being raised but the allegations of said answer are equivalent to alleging that the transportation to Jasper was "under practically similar circumstances and conditions" as it would be to Sioux Falls.

The order of the trial court overruling the demurrer to the answer herein is affirmed.

CORSON, J. I concur in the views expressed by WHITING, P. J.

SMITH, J. While my own conclusions in this case coincide with those of Judge WHITING, the reasoning is along

slightly different lines, and I have presumed to concur specially. No attempt will be made to discuss questions collateral to the specific case before this court, the rulings of the Commission, or decisions of the federal courts, except to say that none have been found which pass directly upon the proposition before us at this time.

The question presented on this appeal is whether, upon the facts stated in the complaint and answer, which are admitted by the demurrer, the freight charge which plaintiff seeks to recover is illegal, because in violation of section 4 of the interstate commerce act. The trial court held the charge illegal as in violation of said act, and the plaintiff brings the action to this court for review, and assigns three grounds upon which it asks a reversal: "(1) The only lawful rate that can be received by the carrier and paid by the shipper is the tariff rate filed, published and posted in accordance with the federal laws regulating interstate commerce. (2) The courts have no jurisdiction to grant relief to an individual shipper in advance of a change in the filed tariffs for an alleged unreasonableness in rates or violation of the long and short haul clause of the act. (3) An accord and satisfaction on the filed and published rate is unlawful, for it is prohibited and penalized by the act." I shall consider only the matters presented in paragraphs 1 and 2 above.

The proposition that the reasonableness of a rate filed and published by a carrier must be inquired into and determined in a proper proceeding before the Commission in the first instance is so well settled that it need not be discussed here. The commerce act is based upon the broad proposition that all rates must be reasonable, and the underlying principle that the carrier shall not in any manner discriminate in favor of or against individual shippers, nor in favor of or against particular localities. The inhibition against discrimination in favor of or against individual shippers is found upon the proposition that a rate which is reasonable as to one shipper is likewise reasonable as to all others, under substantially similar conditions, and that all rates to every shipper shall be reasonable. A rate when filed and published applies to all shippers alike, and, to prevent discrimination in

favor of or against individuals or localities, the statute provides that the filed rate and none other shall be charged and collected by the carrier. Under the provisions of the act any shipper at any time may object to any filed rate, and present the question of its reasonableness to the Commission for adjudication. As to the shipper, this remedy is exclusive, subject only to a review of the action of the Commission by the proper courts. The burden is thus placed upon the shipper to take the initiative upon the question of the reasonableness of the filed rate, and of presenting it to the Commission in every case, except those specified in section 4 of the act. In the first class of cases the specific question before the Commission is whether a certain filed and published rate between the points of shipment and destination, in the particular instance, is reasonable or unreasonable. The innumerable points of shipment and destination render any other method impossible, short of requiring the Commission to specifically fix every rate between points of shipment, in the first instance. In the broadest sense, it may perhaps be said that a filed rate is deemed reasonable until attacked by the shipper, but upon a hearing before the Commission the statute raises no presumption that any filed rate is either reasonable or unreasonable. But a somewhat different situation and procedure are presented when we come to consider the question of discrimination and reasonableness of rates as between localities. The fundamental idea of this provision of the act is that the carrier shall not be permitted to build up or favor one shipping point at the expense and to the disadvantage of another similarly situated. The evil sought to be remedied by the legislation seems to have grown largely out of the practice of carriers to favor localities by giving them a longer haul at a rate lower than that granted to intervening points on the same line.

The act contemplates that under certain specified conditions such lower rates may be justified as reasonable. But it does not permit the carrier to determine the "circumstances and conditions," nor "the particular instances" in which such rates may be established, in advance of any action by the Commission. To make its purpose entirely clear, the act declares that a less charge for the longer haul is deemed unlawful unless expressly authorized by

the Commission.    And the burden of taking the initiative is placed upon the carrier by the act, which says:  "Upon application to the Commission * * such common carrier may, in special cases, after investigation by the Commission, be authorized to charge less for longer than for shorter distances,* * * and be relieved from the operation of this section of the act."    It seems that the "special cases" referred to in this proviso, in which the Commission may authorize such rate, are only those cases in which "the circumstances and conditions are substantially similar," and that the carrier in order to preclude the courts from taking jurisdiction of the question of the legality of rates which establish a lower charge for the longer haul, under substantially similar circumstances and conditions, must take the initiative by applying to the Commission for an order "relieving them from the operation of this section of the act."    What is the "operation of this act" from which the carrier may be relieved?    And what is the situation of the carrier up to the time such relief is granted by the Commission?

The clear and unequivocal language of the section itself answers both questions:    "That it shall be unlawful for any common carrier * * * to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance. * * *"    The "operation of this section" is to render a rate illegal when it violates the statute.    The carrier cannot collect an illegal charge.    The question of the legality of the rate might have been placed beyond the jurisdiction of the court in an action against the shipper, had the carrier chosen to present his application and obtain an order from the Commission authorizing the charge, and relieving him from the operation of section 4.    Until such order is obtained such rate is illegal.    If this conclusion be correct, it becomes the duty of appellant to point out some provision of the act  or some decision of the courts permitting a carrier to collect a conceded illegal rate by an action in the courts.    I have found none.    It is conceded in this case that the

carrier has filed with the Commission and published its rates, and is demanding a recovery upon its filed rate. It is conceded that the rates under which plaintiff seeks a recovery make a greater charge for the shorter haul in the same direction to Jasper than to Sioux Falls on the same line. It is conceded that such haul is made to Sioux Falls and Jasper under substantially similar circumstances and conditions, and that circumstances and conditions are substantially similar at Sioux Falls and Jasper.

In the case of Interstate Com. Com. v. Atchison, T. & S. F. R. Co. (C. C.) 50 Fed. 300, that court holds that a rate made in violation of the express terms of section 4 can be held to be a legal rate, only when expressly authorized by order of the Commission. The court says: "And the power thus conferred is exclusive, and its exercise conclusive, in all cases that fall within the prohibition of the enacting clause of the section to which the proviso is appended; that is to say, to every case where the carrier charges or receives greater compensation in the aggregate for the transportation of passengers, or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance, over the same line, in the same direction, the shorter being included within the longer distance. In all cases, a greater charge for the shorter than for the longer haul is absolutely prohibited unless the Commission, for good cause, sees proper to relieve a particular carrier from its operation."

Upon the specific facts conceded in the record before us, it seems perfectly clear to my mind that the rate which appellant seeks to enforce is illegal and in violation of section 4, the record not disclosing that such rate has been authorized by the Commission. The establishment of a rate such as is admitted in this case is prohibited by the statute except upon order of the Commission, without regard to the question of its resonableness or unreasonableness, subject of course to the right and power of the Commission to make investigation as to its reasonableness at any time upon the question being presented to it in some proper manner, and subject to the power conferred upon the federal courts to review the action of the Commission. The federal

courts have held that a carrier who files and publishes such a rate without authority from the Commission does so at his own peril, subject to the future action of the Commission and the federal courts. But these decisions are not pertinent to the question before us. Nor do any decisions which we have found hold that the section of the act which requires the carrier to charge and collect the filed and published rates and none other under penalties there prescribed, should be so interpreted as to give it the effect of rendering a filed and published rate legal and collectible in the courts, when such rate is in violation of the provisions of section 4.

The carrier must be held to have filed and published such rate at his peril, since it was within his power to make application to the Commission for an order permitting it in the first instance. The question before us is not whether the court has jurisdiction to pass upon the reasonableness of a rate, at either competitive or noncompetitive points, but simply whether the carrier can collect a rate which is illegal upon the undisputed facts.

In my judgment, the ruling of the trial court is correct, and should be affirmed.

McCOY, J. I fully concur in the views expressed by SMITH, J.

HANEY, J. (dissenting). The appeal is from an order overruling plaintiff's demurrer to defendant's answer. The allegations of the complaint are as follows: "(1) That it is, and at all times herein mentioned has been, a corporation organized and existing under the laws of Minnesota, and has complied with all laws of South Dakota relative to foreign corporations doing business in this state, and is entitled because of said compliance with the corporation laws of this state to bring and maintain this action; that the plaintiff is lawfully engaged in the business of common carrier of freight and passengers between Minnesota Transfer in the state of Minnesota and the village of Jasper, in Minnesota, and the city of Sioux Falls, South Dakota; that at said Minnesota Transfer it connects with the Wisconsin Central

and other railway companies operating lines of railway between said Minnesota Transfer and the city of Chicago in the state of Illinois. (2) That the defendant is a corporation organized and existing under the laws of South Dakota and lawfully doing business in Minnesota and the character of its business is wholesaling and retailing building material and fuel at Sioux Falls and at other points in South Dakota and Minnesota. (3) That on or about the 23d day of January, 1907, the defendant caused one car load of hard coal, to wit, 63,200 pounds, to be delivered to the Wisconsin Central Railway Company at Chicago, Illinois, to be carried by said Wisconsin Central Railway Company to Minnesota Transfer, and there to be delivered to a connecting carrier and forwarded by said connecting carrier to Sioux Falls, South Dakota; that said car load of coal was so marked and billed at the time of its delivery at Chicago. (4) That said Wisconsin Central carried said coal over its said line of railroad to Minnesota Transfer in Minnesota, and there delivered it to this defendant to be carried by it to Sioux Falls, South Dakota; that said carriage by said Wisconsin Central and Great Northern Railway companies was to be for a consideration, to wit, the regular published tariff rates between said points. (5) That said car load of coal was received by said Great Northern Railway Company to be carried over its lines of railway and lines of railway operated by it to Sioux Falls, South Dakota, for a consideration, to wit, its proportionate share of the regularly filed and published through tariff rate between Chicago, Illinois, and Sioux Falls by way of the Wisconsin Central and Great Northern and lines operated by it. (6) That when said coal arrived at Willmar, which is a division point on said Great Northern Railway line in Minnesota, the place of destination of said car load of coal was changed, and said shipment diverted to Jasper, Minnesota, said Jasper being a point on said Great Northern line of railway between said Willmar and Sioux Falls; that said diversion was wholly directed and ordered by the defendant. (7) That there is no through tariff rate filed and published between Chicago and said Jasper for freight originating on said Wisconsin Central company's line of railway; that the regularly published tariff schedule for freight

under the classification for coal between said points as filed with the Interstate Commerce Commission and posted in the depots of said Wisconsin Central and Great Northern Railway companies for said class of freight between said points is the local rates on Minnesota Transfer and no other rate is so filed or published— that is to say, the rate of $2 per ton from Chicago to Minnesota Transfer and the rate of $2.25 per ton from Minnesota Transfer to Jasper, making a total of $4.25 per ton between Chicago and Jasper, amounting on said tonnage in all to $134.30; that the said charges of the Wisconsin Central have been paid in full by the plaintiff, the Great Northern Railway Company; that defendant has paid no part of the said freight charges for said shipment, to wit, said $134.30, except the sum of $79, and that there is now due and owing this plaintiff from defendant the sum of $55.30 which amount defendant refused and still refuses to pay plaintiff."

The answer (omitting merely formal parts) is as follows: "The defendant admits all the allegations of the complaint, excepting that it denies that there is now due and owing the plaintiff from the defendant the sum of $55.30. (2) Defendant, further answering, alleges that Jasper, in the state of Minnesota, is a railroad station upon the lines of the plaintiff between Minnesota Transfer in the state of Minnesota and Sioux Falls in the state of South Dakota, and that all freight carried by the plaintiff from Minnesota Transfer to Sioux Falls is necessarily carried through Jasper; that Jasper is situated about 30 miles northeast of the city of Sioux Falls, and that distance nearer to Minnesota Transfer than is the city of Sioux Falls. (3) Defendant, further answering, alleges that there exists no reason, by way of the peculiar geographical position, competition of other transportation facilities or trade or other peculiar conditions, why a greater charge should be made for transporting coal from Minnesota Transfer or from Chicago via Minnesota Transfer to Jasper than is made for the transportation of such coal from Minnesota Transfer or from Chicago via Minnesota Transfer to Sioux Falls, and alleges that the regular tariff rate on coal from Chicago to Sioux Falls via Minnesota Transfer was a just, reasonable, and sufficient tariff on coal from Chicago to Jasper via Minnesota Transfer. (4) De-

fendant, further answering, alleges that upon the 1st day of February, 1908, defendant paid to plaintiff the sum of $79 in full satisfaction of the charges of the plaintiff for the transportation of said car load of coal from Chicago via Minnesota Transfer to Jasper; that plaintiff received said sum of $79 in full satisfaction of said freight charges, and duly executed and delivered to defendant a receipt for said freight charges; that said sum of $79 was the full tariff rate from Chicago to Sioux Falls via Minnesota Transfer and Jasper."

None of its material allegations having been denied the facts stated in the complaint are to be taken as true. Rev. Code Civ. Proc. § 145. All material allegations of fact in the answer are admitted by the demurrer. Hence, the question arises whether, upon the facts thus established for the purpose of this appeal, plaintiff would be entitled to any relief in this action.

These are, in effect, the pertinent facts stated in the complaint: A car load of coal was transported on two lines of railroad from Chicago, in Illinois, to Jasper in Minnesota, via Minnesota Transfer, for which service defendant agreed to pay regular published tariff rates which are, in the absence of a joint rate, the rates separately established and filed with the Interstate Commerce Commission. According to the rates so established the tariff on the car of coal was $134.30, of which defendant has paid $79, leaving a balance of $55.30, and which plaintiff is entitled to recover unless precluded by facts alleged in the answer. It rightly is conceded by the foregoing opinions that the facts so alleged regarding an accord and satisfaction and the reasonableness of the rate constitute no defense. What allegations remain? Only these: Jasper is 30 miles nearer Minnesota Transfer than is Sioux Falls, on the plaintiff's line between that point and Sioux Falls, and no reason exists "by way of the peculiar geographical position, competition of other transportation facilities or trade or other peculiar conditions" why a greater charge should be made for transporting coal from Chicago via Minnesota Transfer to Jasper than is made for transporting coal from Chicago to Sioux Falls via the same route, "the full tariff rate from Chicago to Sioux Falls via Minnesota Transfer and Jasper" on the car of coal

in question being $79. In brief, the contention that the filed rate on coal shipments from Chicago to Jasper via Minnesota Transfer, from which rate the plaintiff cannot deviate without committing a crime, cannot be collected rests alone on the allegation that the filed rate on a car of coal from Chicago to Sioux Falls via the same route is less. no statutory reason existing for any discrimination in favor of Sioux Falls. And, as I understand it, the contention can be sustained only on the assumption that the plaintiff established a greater rate on coal shipments from Chicago to Jasper than from the same place to Sioux Falls, without application to, or authority from, the Interstate Commerce Commission. It does not seem to me that such assumption is warranted by the record. Clearly, the Jasper rate as well as the Sioux Falls rate must be deemed to be the one on file with the Commission, and until changed the only one that may be lawfully charged. It must be taken as true that the Jasper rate is composed of two separately established rates applied to through transportation. All we know of the Sioux Falls rate is that it is "the full tariff rate from Chicago to Sioux Falls via Minnesota Transfer and Jasper." In view of the other admitted facts it necessarily is a joint rate, as the route embraces more than one line. The record is silent as to how or when either rate was established. As section 4 of the act to regulate interstate commerce provides that upon application to the Commission the carrier may, in special cases, be authorized to charge less for longer than for shorter distances, should it not be assumed that the discrimination in favor of Sioux Falls, disclosed by this controversy, resulted from the establishment of the Sioux Falls rate after the Jasper rate was established, and that such special rate was authorized by the Commission? As such special rate might have been established by authority of the Commission, it seems to me this court, upon this record, should presume it was so established. Is it not a case in which to regard as done that which ought to have been done? If the reasonableness of the Jasper rate may not be disputed in this action, I am unable to see how its lawfulness can be affected by the fact that there is a presumptively lawful special joint rate to Sioux Falls over the same route. The lawful establishment of a less rate for a

longer haul necessárily involves the establishment or retention of greater rates for shorter hauls on the same route. Certainly no one will claim that the establishment of the special rate to Sioux Falls, agreeably to the provisions of section 4, would operate to render an existing Jasper rate unlawful under the provisions of the same section. So, it seems to me it should be assumed that both rates were lawfully established, more especially the Jasper rate, and that the answer should be deemed insufficient.

In other words, if the joint rate to Sioux Falls in fact was established by authority of the Commission after the Jasper rate was filed, the latter would be lawful and collectible in this action. If this be so, the unlawfulness of the rate charged, under the circumstances disclosed by the record, results from the fact that a certain special rate was not established when it was filed, or the fact that the special rate, though subsequently established, was not established by authority of the commission. The complaint states a cause of action. Plaintiff seeks to recover the filed rate which defendant agreed to pay—a reasonable, collectible rate, unless rendered unlawful by reason of the special rate to Sioux Falls. No rule of pleading with which I am familiar required the plaintiff to mention the Sioux Falls rate in its complaint. It was enough for it to disclose a presumptively lawful rate for the service rendered, and on the facts stated in its complaint it clearly would be entitled to a judgment for the amount claimed. Now comes the defendant denying its liability solely on the ground that the filed rate which it agreed to pay is unlawful under the provisions of section 4 of the act regulating interstate commerce, and it seems to me its answer is insufficient because it is not therein alleged either that the Sioux Falls rate was established before the filing of the rate charged, or that it was established without authority of the Commission. So, without expressing any opinion as to the extent to which the lawfulness of a filed rate may be attacked in a state court, in advance of action by the Interstate Commerce Commission, I think the order appealed from should be reversed.