TEXAS & PACIFIC RAILWAY COMPANY ET AL. V. A. Y. LESLIE ET AL.

Decided June 23, October 20, 1910.

### 1.—Carriers—Delay—Shortage of Cars.

A railway company was not excused for its delay of four days in forwarding a shipment of cattle received from a connecting line by its inability to furnish cars therefor through a press of business, not unusual or unforeseen, but common at that season of the year, where it did not show the amount of its equipment for the service nor the number of previous orders for cars; nor by its reliance, without inquiry or assurance, on the connecting line permitting its cars to go through with the shipment; nor by the fact that 10 to 20 days' notice to provide cars was customary, only 20 hours' notice being given; nor by the fact that other shippers had sometimes held their cattle at that point while in transit in order to negotiate for their sale.

### 2.—Interstate Commerce—Published Rates—Contract for Less Rate.

There being three lines of connection by rail from the point of shipment to destination, only two of which were wholly within the State, the agent of the initial carrier quoted to the shipper the same rates by each of the three, and the latter selected the interstate route. There was no through rate established for such shipment, the only published rate being the sum of the local tariffs of the connecting lines, which was greater than the rate via the intrastate connections agreed on by the initial carrier with the shipper. The last carrier collected in full the greater, or interstate, rate. Held, that the shipper could not recover from the initial carrier the difference between the rate agreed on and that collected. To permit such recovery, either as damages for failure to comply with the contract, or for misquoting the rates and inducing shipper to select the more expensive route, would accomplish an evasion of the Interstate Commerce Law. Texas & P. Ry. Co. v. Mugg & Dryden, 202 U. S., 242, followed.

ON MOTION FOR REHEARING.

### 3.—Practice on Appeal—Remittitur.

Error being found in respect to only one element of damages recovered, the appellate court, where the amount in question is certain, will reform and render judgment, instead of remanding unless remittitur is entered.

Appeal from the District Court of Tarrant County. Tried below before Hon. James W. Swayne.

*Lassiter & Harrison,* for appellant El Paso & S. W. Ry. Co.

*W. L. Hall* and *Spoonts, Thompson & Barwise,* for appellant Texas & P. Ry. Co.—At the time the shipment involved in this suit was made, no carrier could engage in interstate transportation until its tariffs had been filed with the Interstate Commerce Commission, and having filed such tariffs, any departure therefrom was forbidden under heavy penalties, and

the Act of Congress then in force and governing such shipments provided, "Nor shall any carrier charge or demand or collect or receive a greater, or less or different compensation for such transportation of passengers or property or for any service in connection therewith . . . than the rate, fare and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device, any portion of the rates, fares and charges so specified." Act of Congress, June 29, 1906, 34 St. L., p. 584, sec. 2; Hanley v. K. C. S. Ry. Co., 187 U. S., 617.

The shipper is charged, equally with the carrier and its agents, with knowledge of the tariffs and schedules, and even though the carrier's agent may quote or agree upon an erroneous rate, the correct rate applicable over the route along which the shipment moved, must be collected by the carrier and paid by the shipper. Same authorities. Also: G. C. & S. F. Ry. Co. v. Hefley, 158 U. S., 98; T. & P. Ry. Co. v. Mugg, 202 U. S., 242; Poor v. C., B. & Q. Ry. Co., 12 I. C. C. Rep., 418 to 421.

*A. J. Clendenen,* for appellees.—It was the duty of appellant's agent at Pecos, Texas, on being applied to by the appellees for information as to rates with the view of selecting a route for the shipment of their cattle from Pecos, Texas, to Stratford, Texas, to furnish true information as to the rate over the several routes of which the appellant's line formed a part; and where, as in this case, there were three such routes, the legal rate of freight on two of the same being $54 per car, and that over the third line $89 per car, and said local agent, either by mistake or design, represented to appellees that the regular tariff rate by said last mentioned line was $54 per car instead of $89 per car, the true rate, and that the cattle would move more expeditiously to destination over said last mentioned route, and appellees were thereby induced to route the cattle by the more expensive route, and but for said representation they could and would have routed the cattle via one of the other two routes at the regular tariff rate of $54 per car, then appellant T. & P. Ry. Co. thereby became liable to the plaintiffs for the difference of such rates, which was the sum of $490; and this liability attached to said defendant alone, notwithstanding the excess freight may have been participated in by other carriers. Hennepin Paper Co. v. Northern Pac. Ry. Co., I. C. C. Rep., Dec. 5, 1907; Cedar Hill Coal & Coke Co. v. Colorado South. Ry. Co., 14 I. C. C. Rep., 606; Washington Broom & Woodenware Co. v. C., R. I. & G. Ry. Co., 15 I. C. C. Rep., 219.

LEVY, ASSOCIATE JUSTICE.—On May 19, 1907, appellees delivered to the Texas & Pacific Railway Company 445 head of cattle at Pecos, Texas, intending them to be shipped to themselves at Stratford, Texas. There were three routes by which the cattle could be shipped from Pecos to Stratford over the Texas & Pacific Railway. One of the routes is via Abilene and the Wichita Valley and Fort Worth & Denver Railways, and another is via Fort Worth and the Fort Worth & Denver Railway,

and the other is via El Paso, thence through New Mexico via El Paso & Southwestern Railway and the Chicago, Rock Island & Gulf Railway to Stratford, Texas. Appellees, knowing of the three routes, sought information of the local agent of the Texas & Pacific Railway Company at Pecos as to time of making the trip, changes of cars and the rates of freight charges of the several routes; and the agent informed the appellees that the route each via Abilene and Fort Worth was $54 per car, and that the freight rate over the route via El Paso was the same rate as that over the other routes, and that the latter route would make better time, and there was only one change. Acting on this information of the agent, the appellees then directed the routing of the shipment over the interstate route via El Paso. The Texas & Pacific Railway Company then received the cattle and delivered a bill of lading to appellees agreeing to transport the cattle, consisting of fourteen cars, as routed by appellees, "from Pecos, Texas, station to El Paso, Texas, station, consigned to Leslie & Wharton, Stratford, Texas, at the rate of tariff per car." At Stratford, Texas, the point of destination, the local agent of the Chicago, Rock Island & Gulf Railway Company demanded and collected the freight tariff charges on the shipment at the rate of $89 per car, and over protest was paid by appellees. It was conclusively proved that the freight tariffs issued by the Texas & Pacific Railway Company and filed with the Interstate Commerce Commission and in effect at the time of shipment was a rate of $25 per car from Pecos to El Paso on interstate shipments of livestock, and that the interstate rate in effect from El Paso to Stratford over the El Paso & Southwestern and Rock Island, issued and filed with the Interstate Commerce Commission, was $64 per car; making the sum of the two $89. There was no through tariff rate over the interstate route authorized. The evidence was uncontradicted that the freight rate from Pecos to Stratford over the other routes, which were entirely intrastate, then in force and authorized by the Railway Commission of Texas was a through rate of $54 per car. Upon arrival of the cattle at El Paso two of the steers were fatally injured and died, caused by injuries received en route. The Texas & Pacific Railway Company delivered the cattle at El Paso to the El Paso & Southwestern Railway Company, and the latter received and negligently kept the same in its pens there for four days before shipping out. There was proof that the cattle were damaged in shipment and by the delay, and that additional expense and loss occurred to appellees by reason thereof. All issues of fact were decided by the jury against the contention of the appellants, and there is evidence to support the same; and we here adopt the findings of the jury.

Appellees instituted the suit to recover of appellants the value of the two dead steers, and deterioration in value and injury to the cattle shipped resulting from alleged negligent handling and delay en route, and to recover of the Texas & Pacific Railway Company the amount of the freight charges collected above $54 per car as damages for alleged misrepresentation and misinformation as to freight tariff charges of the

routing. In accordance with the verdict of the jury a judgment was rendered in favor of appellees against the Texas & Pacific Railway Company for $540, covering $490, the difference between the through intrastate freight rate and the sum of the interstate rates filed with the Interstate Commerce Commission, and $50, the value of the two steers which died in transit to El Paso; and in favor of appellees against the El Paso & Southwestern Railway Company for $1330 damages resulting from injury in delay in shipping from El Paso; and in favor of the Chicago, Rock Island & Gulf Railway Company against appellees.

*After stating the case.*—The assignments of the appellant El Paso & Southwestern Railway Company. are first taken up. The first assignment, complaining that the court's charge is erroneous as assuming certain issuable facts as proven, should be, we think, overruled, as not fairly. subject to the objection urged.

The second, fourth, fifth and seventh assignments present the same question, and can be here considered together. Appellants offered · to show that it was usual to receive notice several days ahead for cars for shipments originating on its line, and that it was the general custom of such shippers to give ten to twenty days prior notice, which evidence was on objection excluded by the court, and this is complained of in the assignments. A special charge was asked, and refused by the court, to the effect that if at the time the cattle in question were tendered · there were previous orders on file with appellant which consumed the supply of cars on hand, and appellant exercised reasonable care under the circumstances to furnish cars without delay, it would not be liable for any delay. In this connection it was proved in the case that nearly all the stock shipments moved in April, May and June, and that there was a great demand for cars at that time, and that this condition exists every year at that time, and that it is usual at this place. As against the delay in shipping out the cattle in question after receiving same in its pens from the Texas & Pacific Railway Company, as said by appellant in its brief, "its sole defense was that it had not been notified of the shipment in time to collect this number of cars, and that several orders were on hand for cars ahead of this order." There is no evidence that appellant then owned a single car, or if it had any how many it owned; neither is there any evidence as to the number of "orders ahead" of this shipment. Appellant received about twenty hours notice of the intended shipment on its line before arrival. No duty was .imposed on appellees to give ten or twenty days notice of the arrival of a through shipment, nor could appellant defend against a usual and ordinary through shipment on the ground that it was entitled to receive ten or twenty days previous notice that it would be expected to receive a shipment from a connecting carrier. Reasonably prompt transportation of through commerce would become impossible were such notice required. We do not think the assignments present reversible error. It appearing that the shipment was usual and occurring at this time of each year, it could not be said that the shipment presented such sudden and unforeseen con-

ditions as appellant could not reasonably have anticipated and provided against in the usual discharge of its duty as a common carrier. There was four days delay in shipping out by appellant after receiving the cattle. It was the duty of appellant as a common carrier to have and furnish enough cars without unreasonable delay to meet all demands it could reasonably anticipate. And it could not be said from the evidence that the delay in furnishing cars was without the fault of appellant.

By its third assignment the appellant complains of the refusal of the court to give the following special charge: "You are instructed that the E. P. & S. W. Ry. is not responsible for any agreement between the plaintiffs and the T. & P. agent as to the cattle going through to destination in the cars in which they were shipped. If the delay in furnishing cars at El Paso was caused by the plaintiffs relying on the aforesaid agreement the E. P. & S. W. Ry. Co. is not liable therefor." No recovery was predicated against appellant by appellees by reason of not having the cars ready for immediate shipment, but only for such damages as appellees suffered by its negligent delay in shipping out after the cattle were received by it for shipment. The court's charge instructed the jury that appellant would only be liable for unreasonable delay occurring after the cattle were tendered to it in El Paso for shipment. Neither did the evidence present any issue that appellees were seeking to hold appellant liable for any agreement of the Texas & Pacific Railway Company to furnish cars through to destination. The Texas & Pacific Railway Company agreed to furnish cars to El Paso, but refused to. agree to let its cars go off its line on a through shipment. The only evidence that appellees were relying on the Texas & Pacific cars going through is found in the evidence of one of the appellees when he was asked on cross-examination by appellant why he did not put in an order to this appellant for cars ahead of time, to which he answered that his understanding was that the cattle would go on through and he never thought about getting any more cars. It does not appear that appellant had reasonable grounds to rely on the cars going through, as a reason to excuse delay in shipment. The assignment is overruled.

Because certain owners of cattle had sometimes voluntarily left cattle in the appellant's pens while they were making arrangements to sell them, would not authorize or justify the appellant in holding and delaying the shipment of appellees' cattle; and it was not error to exclude the proposed evidence complained of in the sixth assignment. It appears conclusively that appellees were insisting on a prompt shipment by appellant.

The eighth assignment complains of the verdict being contrary to the evidence, and excessive. We think the evidence supports the findings of the jury, and the assignment must be overruled.

The appellant the Texas & Pacific Railway Company has grouped ten assignments and presents them as involving the same question of law. The contention is that though the local agent may have negligently

quoted the interstate rates of shipment, and the appellees relied upon the rates so quoted in routing the shipment, still the appellees could not legally recover from appellant the difference between the wrongfully quoted rate and the lawfully published interstate rate. Under the authority of the case of Texas & Pacific Ry. Co. v. Mugg & Dryden, 202 U. E., 242 (50 L. Ed., 1011), the contention, we think, must be sustained. While the facts in that case are not entirely similar to the instant one, the principle announced is the same and applicable here. The suit there, as here, was not on contract, but in damages for misrepresentation as to rates involving a financial loss to the shippers in a contract based on the quoted rates. The element of damage there, as here, was the amount of the freight charges in difference between the quoted rate and the lawful rate. The effect of the decision is to deny a recovery back of any part of freight charges as a basis for reparation in a suit for damages for mis representation of true lawful rates. The reason underlying the decision is that the interstate rate, when regularly established, is the rate imposed by the law and not the railway company, and hence the shipper is charged with knowledge of the lawful rates published; and to allow the shipper to receive back a part of the lawful rate, either as a basis of reparation for damages for misrepresentation or breach of a contract to carry for less than the lawful rate, would, in practical results, operate as a violation of law, in that the shipper in the particular shipment would be enjoying the benefit of a lower rate than the lawful rate. It is true that the appellees were misled into taking a more expensive route. But their only damage is that of being required to pay more freight charges than they were led to believe by the agent that they would have to pay. In the Mugg & Dryden case they were led to believe by the agent that the rates were less; and they contracted in reference to the quoted rates, and suffered loss in consequence. If appellees were charged with a knowledge of published interstate rates, and the law prohibits the enjoyment of a less rate, a recovery back of a portion of such lawful rates, as damages resulting, could not be legally predicated on the error of taking the more expensive route. We conceive that to be the effect of the decision *supra.* It follows that it was error to allow a recovery for the freight rates of $490. The error is curable, however, by a remittitur of that amount by appellees, if they elect to do so. The other assignments are overruled.

The judgment against the El Paso & Southwestern Railway Company is affirmed; but the judgment against the Texas & Pacific Railway Company is reversed and remanded unless appellees within twenty days from the date of this judgment file a remittitur of $490, being the freight charges; in which event the judgment of the District Court will be modified and affirmed for $50, the value of the two dead steers; said appellant to recover of appellees its cost of appeal.

ON MOTION FOR REHEARING.

The appellee strongly insists that the principle announced in the Mugg & Dryden case is not applicable here. His contention is that the instant case as made is analogous to a suit for damages for failure or refusal of the agent of the initial carrier to transport a shipment over the least expensive route, there being two routes available to the point of destination. By a proper construction of the pleading and the evidence in this case, the suit, we think, is simply to recover the difference between the rate quoted by the agent of the initial carrier and the lawful rate in force collected at the point of destination, as damages, as alleged in the petition "for the negligent failure of the defendant Texas & Pacific Railway Company to give plaintiff correct information in regard to said rate, as it was its duty to do." The petition specially lays the damages at the difference between $54 per car and $89 per car, which amounts to $490. $54 per car was the rate quoted by the agent to appellee, and $89 per car was the lawful rate collected at point of destination. Neither the pleading nor the evidence shows any disregard of the shipper's instructions in the matter of routing, or any refusal or failure by the agent of the railway company to transport the shipment by the route carrying the lowest rate. It is undisputed that the appellee himself chose and directed the route, and the shipment went according to the route so chosen. We do not feel warranted in interpreting the pleading and evidence as seeking a recovery on any other ground than first above stated. If the suit is by the shipper to recover in the form of damages, as we think it is, a portion of the lawful freight charges paid by him at destination, on the ground of a mistake by the carrier in responding to his inquiry as to the lawful rate then in force, then we think as before, that the ruling in the Mugg & Dryden case, supra, decides the question here. It is not the question here of whether any kind of damages at all could be recovered in the proper suit, for negligence of the agent of the railway company inducing a shipper to select a more expensive route, but the simple question of whether such freight charges are allowable as an element of damages where the lawful rate is collected at destination notwithstanding an erroneous quotation of another and lower rate by the agent of the initial carrier in response to an inquiry of the shipper. A contract of a carrier to ship at a lower rate than the lawful rate is not valid, and, whether entered into by intention or negligence of the agent of the initial carrier, affords no legal ground of action for the recovery by the shipper of any portion of the lawful charges as his damages. We therefore overrule the motion.

We think the motion of the appellant the Texas & Pacific Railway Company should be granted; and instead of remanding the case as to the item of $490, judgment should be here rendered for said appellant; and the judgment of the trial court is so modified. The motion as to the other appellant is overruled.

         *Affirmed in part and in part modified and rendered.*

Writ of error refused.