### ATLANTIC COAST LINE RY. CO. v. BRISTOL STEEL & IRON WORKS, Inc.

District Court, W. D. Virginia, at Roanoke. Dec. 29, 1939.

Harvey B. Apperson, of Roanoke, Va., for plaintiff.

S. Bruce Jones, of Bristol, Va., for defendant.

PAUL, District Judge.

This case involves an action by the plaintiff to recover from defendant the amount of certain undercharges on freight shipments and a counterclaim or set-off asserted by the defendant.

The facts, agreed on by the parties, have been embodied in a stipulation filed as part of the record. Briefly stated, they show that the defendant, having contracted to furnish certain steel for the erection of some building by the Star Warehouse Company of Lake City, South Carolina, ordered the steel shipped from Phoenixville, Pennsylvania, to Bristol, Virginia, for fabrication at defendant's plant at Bristol, and for ultimate delivery in South Carolina. The shipment is described as being from Phoenixville to Lake City with right of fabrication in transit at Bristol.

The defendant's contract with the South Carolina concern (the result of a bid made and accepted) included payment by defendant of the freight charges on the steel delivered. Prior to submitting its bid defendant had inquired of the agent of the Southern Railway at Bristol as to the freight rate and was erroneously informed that the through fabrication in transit rate on steel routed from Phoenixville to Bristol to Columbia, South Carolina, to Lake City, South Carolina, was 47½¢ per hundred pounds. Defendant relied on this information and based the figures in its bid upon it.

There were five carloads of the steel shipped to the Star Warehouse Company at Lake City. The Warehouse paid the freight (on a rate of 47½¢) and collected the amount so paid from defendant by deducting it from the sum due under their contract.

It is stipulated that published tariffs provide for a through rate of 47½¢ on shipments from Phoenixville to Lake City via Richmond and Pinner's Point, Virginia, but that the tariffs do not provide for this rate over any route through Bristol. That, in fact, the published tariffs do not provide any joint through rate on steel from Phoenixville to Lake City with fabrication in transit at Bristol and that the lowest combination rate obtainable on such shipments from Phoenixville to Bristol to Columbia to Lake City (the route designated by defendant) was 65½¢ per hundred pounds.

The plaintiff, the delivering carrier, sues for the difference between the freight paid and the amount properly chargeable, aggregating on the five cars the sum of $312.47.

It is too well settled to require the citation of numerous authorities that the carrier is required to collect the legal rate on freight shipments and, if it has failed to do so at the time of shipment, it must collect the amount of the undercharge whenever it discovers that the lawful charge has not been paid. No intentional or inadvertent misstatement of the appli-

cable legal rate will bind the carrier. The rule is succinctly and completely stated in McFadden v. Alabama Great Southern Ry. Co., 3 Cir., 241 F. 562, at page 565: "In approaching this question we lay aside all considerations of conduct, intention, mistake and misunderstanding respecting the rate paid, for the law is very well settled that the Act to Regulate Commerce [49 U. S.C.A. § 1 et seq.] demands not only that the carrier shall charge but that the shipper shall pay the legal rate. The contract between carrier and shipper is no longer a contract as to rates; it is merely a contract that the carrier will render transportation service when the shipper pays the legal rate. When the transportation is interstate, the interstate rate is the legal rate, and that rate must be demanded and paid, for both the carrier and shipper are charged with notice of it; and if. a lesser rate is charged and paid, intentionally or innocently, recovery must be had against the shipper for the difference, in order that the policy of the law against unjust discrimination may be carried out." And there are numerous other cases to the same effect.

In this case, however, the defendant has filed what it terms a plea of set-off, the substance of which is that before making the shipment it made inquiry of one of the connecting carriers (not the plaintiff) as to the applicable rate, that its sale price of the steel was based on the rate named by the carrier's agent, namely 47½¢, and that as a result of such misstatement it, the defendant, has suffered loss to the extent of the undercharge which is now asserted against it. The inference is that had the correct rate on the shipment been given the defendant's price on the steel would have been sufficiently higher to cover this and that, the defendant having fixed its price on the basis of erroneous information given by the carrier, damage was suffered by the defendant which it is entitled to assert as a counter-claim or set-off against the claim for the undercharge. And this appears to be the contention of defendant. The defendant's set-off is obviously the same in amount as the amount sought to be collected from it.

To maintain its claim of set-off for damages suffered, the defendant relies upon certain provisions of the Interstate Commerce Act, to be found in Section 6, Par. (11) of Title 49 U.S.C.A. and in Section 8 of the same title, and upon what is termed Conference Rulings 474(c) of the Interstate Commerce Commission.

Title 49, U.S.C.A. Sect. 6, par. (11), provides that where a written request has been made to the agent of a carrier for a written statement of the rate applicable to a described shipment between stated points and the carrier refuses or fails to give such statement within a reasonable time or misstates the applicable rate and the person making such request is damaged by the failure or misstatement, the carrier shall be liable to a penalty of $250 to be recovered by the United States.

It is evident that this section standing alone is not applicable to the situation here presented and furnishes no authorization for a civil claim by the shipper against the carrier. But the defendant contends that a right of action for damages is given to it by Sect. 8 of Title 49, U.S.C.A., which provides that if any carrier "shall do, cause to be done, or permit to be done any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such * * * carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter * * *."

It is apparently the contention of the defendant that the action of the carrier's agent in giving it erroneous information as to the freight rate was a violation of Sect. 6, par. (11) and because of this "violation of the provisions of this chapter", the defendant, under the provisions of Sect. 8, is given a right to recover any damages it. suffered by reason of the erroneous information.

That the contention of the defendant is not well taken has been settled by repeated decisions denying such claims. In Texas & Pacific Ry. Co. v. Mugg & Dryden, 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011, a shipper of coal was quoted an erroneous freight rate and, having sold coal at a price based on such erroneous rate, he sued to recover damages when compelled to pay the proper rate which was higher. There, as here, the amount of damage was alleged to be the difference between the proper rate and the rate erroneously given and with reference to which the sale had been made. The Supreme Court held that he could not recover. See also Gulf, C. & S. F. Railroad Co. v. Hefley, 158 U.S. 98, 15 S.Ct. 802, 39 L.Ed. 910; Illinois Central R. Co. v. Henderson Elevator Co., 226 U.S. 441, 33 S.

Ct. 176, 57 L.Ed. 290; Hamlen & Sons Co. v. Illinois Central R. Co., D.C., 212 F. 324; Schenberger v. Union Pacific R. Co., 84 Kan. 79, 113 P. 433, 33 L.R.A.,N.S., 391; Louisville & N. R. Co. v. Maxwell, 237 U. S. 94, 35 S.Ct. 494, 59 L.Ed. 853, L.R.A. 1915E, 665.

■ Referring to the so-called Conference Ruling cited by defendant, it may be said. that Conference rulings were the various conclusions and rulings made by the Interstate Commerce Commission on questions submitted to it from time to time and published for the guidance of shipper and carriers. As the Commission itself has stated: "These rulings express the views of the Commission on informal inquiries involving special facts or requiring an interpretation and construction of the law, and are to be regarded as precedents governing similar cases."

Conference rulings never had the force of statutory law and, so the Court is informed, were rescinded in their entirety by the Commission in 1928. As to certain matters, however, the Commission has continued to follow the principles and rules of conduct embodied in the Conference ruling covering the specific matter.

The ruling invoked by the defendant (474 (c) is as follows: "The obligation lawfully rests upon the carrier's agent to refrain from executing a bill of lading which contains provisions that cannot lawfully be complied with, or provisions which are contradictory and therefore impossible of execution. When, therefore, the rate and the route are both given by the shipper in the shipping instructions and the rate given does not apply via the route designated it is the duty of the carrier's agent to ascertain from the shipper whether the rate or the route given in the shipping instructions shall be followed. The carrier will be held responsible for any damages which may result from the failure of its agent to follow this course."

This ruling, by its terms, covers the case where a rate and route are both designated in shipping instructions and are found to be in conflict; i. e., that the rate given does not apply to the route designated. It is then the duty of the carrier's agent to call attention to this conflict and ascertain whether the shipper desires the rate or the route followed. And the carrier is responsible for any damage resulting from failure of the agent to follow this course. In other words, where rate and route are both designated and the rate is not applicable to the designated route but the routing may be followed at a different rate, the carrier must give the shipper the opportunity to elect between paying the designated rate on a different route or using the designated route at a higher rate.

In this case, however, it is conceded that there is no published through rate from Phoenixville to Lake City via Bristol. That the rate inserted in the bill of lading was not applicable over any route. Under such conditions the liability of the carrier turns on the question of whether the shipper has been damaged. In the instant case it is conceded that the lowest combination rate from Phoenixville to Bristol to Columbia to Lake City was 65½¢, the rate which the plaintiff now seeks to collect. In other words the lowest legal rate which the shipper could have obtained was that which it is now sought to collect from it. The shipper is not being charged with a higher rate than it might have obtained over another route. It was given the lowest rate available over any route and even if its attention had been called to the error in the rate designated, it could have chosen no other route over which it could have shipped at a 47½¢ rate or at any rate lower than 65½¢.

It is not apparent, therefore, wherein it has been damaged by the failure of the carrier's agent to call attention to the fact that the rate was erroneous and did not apply over the route named or over any route. The damages referred to in the Conference ruling cited are damages or loss to the shipper by denying him the opportunity to exercise an informed choice as to route and rate.

In Crane & MacMahon v. New York, Chicago & St. L. R. Co., 168 I.C.C. 319, it was held that, where the rate named in the bill of lading was not applicable over the designated route and no lower rate was in effect over any route, and shipment was forwarded over route specified, charges were applicable on basis of lowest rate over that route, and shipment was not misrouted.

In Washington Building Lime Company v. Baltimore & O. R. Co., 173 I.C.C. 370, the rate inserted by shipper in bill of lading was not applicable over any route and the rate charged was the lowest available rate over any route. Although shipment

was not routed in accordance with shipper's instructions, it was held that no damage resulted.

The claim of set-off will have to be denied and a judgment entered for plaintiff in the amount sued for and costs.