## SOUTHERN PAC. CO. v. SOUTHERN RICE SALES CO., Inc.

### No. 11552.

Court of Civil Appeals of Texas. Galveston.

Oct. 14, 1943.

Rehearing Denied Nov. 4, 1943.

————◆————

Baker, Botts, Andrews & Wharton, John P. Bullington, and William H. Watts, all of Houston, for appellant.

Harry R. Jones, and Andrews, Kelley, Kurth & Campbell, all of Houston, for appellee.

CODY, Justice.

This is an action by appellant, a common carrier by water, to collect from appellee undercharges on 147 carloads of clean rice, which were shipped from Houston to North Atlantic ports in the United States between April 4, 1940, and March 3, 1941. Appellee's answer consisted of a denial that undercharges were outstanding; appellee further urged an alternative plea, both defensively and by way of cross-action, to the effect that the shipments in question had been misrouted.

The trial which was before the court without a jury resulted in a judgment for appellee. No findings of fact or conclusions of law were requested, and none were filed.

Appellant seeks a reversal of the judgment, and its rendition here in its favor upon these points:

1. That the court erroneously construed the tariff provision relating to the shipments as authorizing the application of the 26 cent proportional rate to that portion of the transportation between appellant's docks at Houston and the docks at the several North Atlantic ports;

2. That the court erred in failing to find that the shipments were not misrouted.

■ There is, we believe, no dispute about the facts. Each of the shipments originated at mills or warehouses which were located at up-town points in the City of Houston, and moved over the terminal tracks (which are located partly within and partly without the corporate, but wholly within the switching limits of the City of Houston) for distances in the various shipments from 8½ to 16 miles, to the docks of appellant at the Turning Basin of the Houston ship channel in Houston. From appellant's said docks each shipment moved via appellant's ships to a North Atlantic port.

Thus each of the shipments was interstate commerce and is governed by the Interstate Commerce Act, and subject to the Interstate Commerce Commission's jurisdiction. Hence the tariffs on file with the Commission contain the rates applicable to said shipments. Appellee inserted in each bill of lading, under the column designated thereon "Class or rate", the rate of 26 cents. (Thereby giving instructions that the shipment involved should move by one of appellant's ships from its docks in Houston to a North Atlantic port over a route to which said 26 cent rate applied.)

During the period these shipments moved, appellant's tariffs, on file with the Commission, contained a published rate of 26 cents per hundred pounds for the transportation of clean rice from appellant's Houston docks to North Atlantic ports. subject to the following restrictions: "Ap‧plicable only as proportional rate on traffi‵ on which no transit privileges are accord⁻ ed, moving via rail lines to Galveston ⌐‑ Houston, Texas, from points in Louisiar‑‑ and Texas."

No transit privileges were accorded ar‑ Ɪ of the shipments involved, and a provision inserted into the bills of lading waived such privileges. The parties have stipulated, what is unquestionably the law, that if the 26 cent rate can be lawfully applied as the proportional rate on the shipments for that portion of the transportation performed by appellant (that is, so much of the transportation as was water borne from dock to dock), then the correct charges were collected by appellant.

The aforesaid tariff became effective about April 4, 1940. Both prior to and during the period said 26 cent rate has been

in effect, there was available to Houston shippers a 42 cent joint through rail and water rate (with the charge for transit privilege superadded) on shipments of clean rice from interior points (where the rice is produced and shipments thereof must originate except where the movement is broken) to North Atlantic ports. Under the 42 cent rate, the arrangement for the distribution thereof which the steamship companies had with the rail carriers, the steamship companies received substantially less than 26 cents for the water-borne portion of shipments of rice originating at interior points and going to North Atlantic ports (namely, from 18 cents to 21 cents). It was for the purpose of redressing this situation that the steamship companies concocted the aforesaid 26 cent proportional rate, whereby, without increasing (or, for that matter, without decreasing) the overall cost to the shipper of moving rice from interior points to the North Atlantic ports, though such movements were broken in two at Houston the steamship companies got the 26 cents. The steamship companies' agent who published and filed the tariff under consideration thought that, by the use of the language in which said tariff is framed, this purpose of enabling the water carriers to receive the 26 cent rate without any over-all cost to the shipper had been accomplished. Appellant's duly authorized agent wrote appellant a letter to the effect that the 26 cent rate applied and there is no question but that appellant believed it.

It was established by appellee that it was as cheap for Houston shippers to ship from interior points to North Atlantic ports (with the cost of transit added) as it was to ship from said interior points and break the shipment at Houston, and then use the 26 cent rate.

If the language used in the tariff will bear the meaning which the proof in this case has established it was intended to bear by its framers, then the 26 cent rate was lawfully applicable, otherwise not.

■ The Interstate Commerce Commission found on February 21, 1941, in the case of Port of Beaumont et al. v. Agwilines, Inc., et al., 243 I.C.C. 679, that appellant and other steamship lines were improperly applying the 26 cent rate on shipments such as those involved in this case. This decision was based upon the Commission's conclusion that (so far as is relevant to this case) the language of the aforesaid tariff could not be construed to mean that

the 26 cent rate was applicable to such shipments as are involved in this case, namely, shipments originating at up-town Houston points and which were transported by rail to appellant's docks on the ship channel wholly within the switching limits (that is, over the terminal tracks) of Houston. Appellee was not a party to aforesaid proceeding before the Commission. And, as the tariffs have the force and effect of statutes, their construction is a question of law for the courts. Lowden v. Simonds-Shields-Lonsdale Grain Co., 8 Cir., 97 F.2d 816. Upon the authority of Swift v. United States, 7 Cir., 255 F. 291, the court held, in Atlantic Coast Line R. Co. v. Atlantic Bridge Co., 5 Cir., 57 F.2d 654, 655: "Tariffs, like statutes, have the force of law; like statutes, they must be expressed in clear and plain terms, so that those dealing with and governed by them may understand them and act advisedly." Of course, it is true of tariffs as it is of statutes that "Rules of statutory construction are to be invoked as aids to the ascertainment of the meaning or application of words otherwise obscure or doubtful. They have no place, as this court has many times held, except in the domain of ambiguity. * * * They may not be used to create but only to remove doubt." Russell Motor Car Co. v. United States, 261 U.S. 514, 519, 43 S.Ct. 428, 430, 67 L.Ed. 778.

■■ We have concluded that, looking only at the words of the tariff, there is no ambiguity in them. The tariff clearly states that the 26 cent rate shall be applied on traffic "moving via rail lines to Galveston or Houston, Texas, from points in Louisiana and Texas". We fully appreciate the fact that the rate in question applies only to traffic after it has arrived at docks and which is moved therefrom, and that docks are at the water's edge, but we are unable to see that the word "Houston" as used in the tariff is ambiguous. Uptown points in Houston are in Houston and so are the docks of appellant. Traffic which moves by rail from an uptown point in Houston to appellant's docks in Houston is traffic which moves from one point in Houston to another point in Houston. The fact that some portion of the switching limits are outside of the corporate limits of Houston does not make any difference. Only traffic which originates at a point without Houston can move via rail lines to Houston. It is only after one knows the purpose for which the 26 cent rate was cre-

ated that it becomes possible to read into the words of the tariff the meaning which appellee contends they have, and which appellant and the other steamship companies conceived that they have. We cannot give effect to that purpose by amending, through construction, the tariff so as to make the tariff conform to the purpose of its framers, but which they failed to express. That would be to corrupt the meaning of the language used, not to construe it, to make it square with what was intended but not expressed.

This brings us to the consideration of appellee's plea of misrouting, urged both defensively and by way of cross-action. We have found this branch of the case difficult.

■ By the Interstate Commerce Act, 49 U.S.C.A. § 15(8), a shipper is authorized to give routing instructions for his freight, which the carrier must obey. As shown above, appellee availed itself of such right with respect to all shipments by inserting in all bills of lading that the shipment should move from appellant's docks in Houston via one of its ships to a North Atlantic port, and likewise inserted therein the 26 cent rate. With reference to such a situation, the Commission said in Cudahy Packing Co. v. Baltimore & O. R. Co., 173 I.C.C. 121: "We have over a long period of time consistently found that where there is a conflict between a rate and routing instructions in the bill of lading it is incumbent on the initial carrier to obtain further and more definite instructions and that its failure to perform this duty makes it chargeable with misrouting and liable for any resulting damage."

■ We have found that the 26 cent rate did not lawfully apply to shipments originating at uptown points in Houston. Appellant was charged by law with knowing that the 26 cent rate did not apply, even though it had concocted the tariff in question for the purpose of applying said rate to such shipments. Therefore, when the routing instructions called for shipment from its Houston docks to North Atlantic ports via one of its boats, and the rate specified was the 26 cent rate, because of such conflict, it became the duty of appellant to obtain from appellee further and more definite instructions, and its failure to do so made it chargeable with misrouting and liable for any resulting damages.

Indeed it was held in Atlantic Coast Line R. Co. v. Bristol Steel & I. Works, D.C.,

30 F.Supp. 726, 729, which case is quoted from and relied upon by both parties: "This ruling, by its terms, covers the case where a rate and route are both designated in shipping instructions and are found to be in conflict; i. e., that the rate given does not apply to the route designated. It is then the duty of the carrier's agent to call attention to this conflict and ascertain whether the shipper desires the rate or the route followed. And the carrier is responsible for any damage resulting from failure of the agent to follow this course. In other words, where rate and route are both designated and the rate is not applicable to the designated route but the routing may be followed at a different rate, the carrier must give the shipper the opportunity to elect between paying the designated rate on a different route or using the designated route at a higher rate."

The court then went on to say that, since it was conceded that the rate inserted in the bill of lading was not applicable over any route that, "under such circumstances the liability of the carrier turns on the question if the shipper has been damaged. * * * The shipper is not being charged with a higher rate than he could have obtained over another rate." And the court held that the shipper could not have suffered any damages as he obtained the lowest possible rate, which was the rate sued for.

Now in the instant case the lowest rates which could be lawfully applied to shipments originating at Houston, on which transit privileges had been waived, and moving from appellant's docks via appellant's ships to North Atlantic ports are the rates which appellant is here seeking to enforce. So, if the shipments in question must be treated as originating at Houston, without transit privileges, we must uphold the right of appellant to recover as undercharges the sum it sues for, because such rates are the only ones which could be applied.

■ But it is appellee's contention, and the basis of its alternative suit for damages for misrouting, that at all material times it was in a position to have applied to every shipment of rice the above mentioned 42 cent joint through rail and water rate. Appellee's proof established that Houston shippers ship rice from interior points to warehouses in Houston, and retain the bills of lading on such shipments of rice to enable them to enjoy the privilege of re-

maining in storage not to exceed a year's time, and then be shipped on to market (that is, to a North Atlantic port) upon the theory that the shipment was not broken at Houston, but merely enjoyed a transit privilege. Of course, the shipper does not expect, and is not required to ship the same rice which he stored in the Houston warehouse, but he gets back from the warehouse a like amount of the same grade or quality which he stored. In order to get the 42 cent rate he must surrender bills of lading on shipments of rice into Houston from interior points when he ships out on the 42 cent rate. Appellee's proof established that it at all material times possessed sufficient bills of lading to have accorded to each shipment transit privileges, and to have obtained therefor the 42 cent rate.

It was the duty of appellant to advise appellee that there was a conflict between the rate specified and the routing instructions. The fact that appellant did not know this is no excuse, for the law charged appellant with such knowledge. Had appellant performed this duty, instead of waiving transit privileges, and prescribing the 26 cent rate for the transportation from Houston to North Atlantic ports, appellee would have claimed "transit" and have obtained the 42 cent rate from interior points to North Atlantic ports. Had this been done, there would not have accrued any undercharges on the freight shipped. For we have pointed out that the 26 cent rate was concocted to make the over-all cost to the shipper the same as that which he had to pay under the 42 cent rate. The only difference was that under the 26 cent rate the steamship companies got a greater share of the freight charges paid by the shipper. That appellee was actually damaged by appellant's breach of duty in the amount of the undercharges which were not collected and are now sued for is obvious. The only question is whether appellee is entitled to collect the damages which it has suffered.

It is conceded that if there was another route from Houston to points of destination to which the 26 cent rate applied, appellee could recover in damages an amount equal to the undercharges. See the Bristol case, supra. The obvious principle underlying the decisions represented by the Bristol case is that there is nothing in the Interstate Commerce Act which prevents a shipper from recovering damages from the carrier for misrouting so long as the shipper does not get his freight moved cheaper than other shippers similarly situated. Since the evidence shows that to allow appellee to recover the damages it sues for will not permit it to have its freight shipped cheaper than other shippers situated as it was when the duty of appellant arose to notify appellee of the conflict between the rate and the routing instructions, we have concluded that appellee is entitled to recover the damages which it actually has suffered, damages which it would not have suffered had appellant performed its duty.

Since the amount of appellee's damages balance the amount of undercharges sued for, the court correctly allowed no recovery to appellant.

The judgment is affirmed.

Affirmed.