## STANDARD RICE CO., Inc., v. SOUTHERN PAC. CO.

### No. 10732.

Circuit Court of Appeals, Fifth Circuit.

Dec. 1, 1943.

W. N. Arnold, Jr., of Houston, Tex., for appellant.

Cyril J. Smith, John P. Bullington, and William H. Watts, all of Houston, Tex., for appellee.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

Southern Pacific Company, doing business as Southern Pacific Steamship Lines, plaintiff, sued Standard Rice Company, Inc., defendant, to recover alleged undercharges upon 72 shipments of rice, moving from the defendant's warehouse and mill, at Houston, Texas, to various north Atlantic ports. The plaintiff collected and the defendant paid a rate of 26 cents per hundred pounds of rice, under the provisions of Item 7070-A of Supplement No. 3 of Tariff 37-A, King's Atlantic-Gulf Coastwise Steamship Freight Bureau Tariff.

Defendant denied that undercharges were outstanding and due, and alternatively pleaded misrouting, both defensively and by cross-action.

A jury was waived, and upon trial the court concluded that the 26 cent rate was not applicable, and gave judgment to plaintiff based on a 33 cent or 36 cent rate, whichever applied. Defendant appeals.

Nearly all the evidence is stipulated. The important facts in the case are these: The defendant operates a rice mill and warehouse located within the corporate limits of the City of Houston, Texas, and for a

long period of years has been engaged in marketing clean rice; during the period involved here it shipped 72 shipments of clean rice from its mill and warehouse to various north Atlantic ports; all these shipments moved over house or side tracks from point of origin to plaintiff's Houston docks, or to its docks at Galveston, Texas; they were there delivered to plaintiff and by it transported by boats to destinations; on all such shipments the rate of 26 cents covering the portion of transportation performed by plaintiff was inserted in the bills of lading and in the freight bills; the rate of 26 cents was collected by plaintiff and paid by defendant upon each of the shipments; if the 26 cent rate was the applicable rate then the correct charges were assessed and collected, and if the 26 cent rate was not the applicable rate then a rate of either 33 cents or 36 cents was the applicable rate; from interior points in Texas and Louisiana there has been in effect since long prior to April 1, 1940, a joint through rail and water rate of 42 cents per hundred pounds, which covered and included transportation of rice from interior points in Texas and Louisiana to the docks of the plaintiff at Houston and Galveston; this rate included the unloading of such rice from railroad cars and the loading of same aboard plaintiff's boats and transportation of such rice to north Atlantic ports; in connection with such joint through rail and water rates, there was a transit privilege under which a shipper was permitted on payment of a transit charge of 2¾ cents per hundred pounds, to move rice by rail from interior points of origin to warehouse or mill, unload and process it, and thereafter within a year, reship an equivalent quantity of rice to the gulf ports of Houston and Galveston, to north Atlantic ports, for an aggregate charge of 42 cents plus 2¾ cents, or a total of 44¾ cents per hundred pounds; this 44¾ cents was divided between the railroads and the steamship lines; effective April 1, 1940, plaintiff published and filed with the Interstate Commerce Commission the 26 cent rate involved in this litigation; such tariff was on file during the entire period that the shipments here under consideration moved; the item in which this rate was published contained the following clause: "Applicable only as proportional rate of tariff on which no transit privileges are accorded moving via rail lines to Galveston or Houston, Texas, from points in Louisiana and Texas"; under this 26 cent rate, plaintiff was permitted to keep all of

the 26 cent rate and did not have to divide any of the rate with the rail carriers; it was further agreed between the parties that no transit privilege was accorded on any of the shipments; a provision waiving transit was inserted in the bills of lading, and all such shipments moved by rail from points of origin to docks of plaintiff at Houston and Galveston. It was further stipulated that if the 26 cent rate could be lawfully applied upon such shipments for the portion of the transportation performed by the plaintiff, the proper charge was collected.

The tariff in question contained three rates: (1) A 33 cent rate for shipments originating at the docks at Houston and Galveston. (2) A 36 cent rate for shipments originating at points other than the docks. (3) A 26 cent proportional rate for traffic on which no transit was accorded, and which moved "via rail lines to Galveston or Houston, Texas," from points in Louisiana and Texas.

This is the issue: Was the movement by rail from defendant's warehouse in Houston to the docks in Houston movements "via rail lines to * * * Houston", within the meaning of the appropriate tariff? If they were, the 26 cent rate was applicable; if they were not, the 33 cent or 36 cent rate, whichever was less, was the applicable rate.

The defendant presents the same defense here as it did in the court below: That the 26 cent proportional rate applied upon the shipments involved; and if the 26 cent rate was not applicable, plaintiff was nevertheless guilty of misrouting as to each of such shipments and was liable to defendant for the resulting damages which were equivalent to the full amount of any outstanding undercharges.

We may conclude that both plaintiff and defendant were willing and eager to see the 26 cent rate upheld and declared legal, since it gave to the plaintiff the entire amount of the 26 cent rate and at the same time reduced the rate paid by defendant. To this end plaintiff strenuously insisted that the 26 cent rate was applicable before both the Interstate Commerce Commission and the U. S. Maritime Commission. However, both Commissions reached the conclusion that the 26 cent rate was not applicable to shipments originating at points within the cities of Houston and Galveston. Port of Beaumont, Texas v. Agwilines, Inc.,

243 I. C. C. 679; Port of Beaumont, Texas v. Agwilines, Inc., A. M. C. 1941, Vol. I, p. 425; Cf. Southern Pacific Company v. Southern Rice Sales Company, Tex.Civ. App., 174 S.W.2d 1018 October 14, 1943. While we are not bound by these decisions we are of opinion they are sound and should be followed.

■ On the coming down of these decisions, it became the duty of plaintiff to collect for undercharges resulting from its misquotation of the 26 cent rate. The applicable rate cannot be waived and must be collected by the carrier. Texas & P. Company v. Mugg & Dryden, 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011; Penn. R. Co. v. International Coal Company, 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas. 1915A, 315. Defendant declined to pay the undercharge.

■ When we carefully read item 3 of the quoted tariff it becomes manifest and the conclusion is unescapable that the 26 cent proportional rate assessed and collected by plaintiff on the rice shipments which originated at a warehouse in Houston and which moved to the docks in Houston over house or switch tracks was not the applicable and lawful rate. This 26 cent rate only applied where shipments originated outside of Houston. Port of Beaumont, Texas v. Agwilines, Inc., supra; Port of Beaumont, Texas v. Agwilines, Inc., supra; Cf. Southern Pacific Company v. Southern Rice Sales Company, Tex.Civ.App., 174 S. W.2d 1018, October 14, 1943.

■ The mistake of plaintiff in quoting to defendant the 26 cent rate and which was not applicable can avail defendant no relief. It must pay the applicable rate, the lawful rate. All shippers stand equal under this tariff law of the carriers. The rate measured here to defendant as applicable is and must be the same and the exact rate measured to every other shipper who finds himself confronted with the same facts and conditions.

■ It was encumbent upon defendant to show that by reason of misrouting or some other cause it was damaged and caused to pay more than the applicable rate. The evidence does not disclose evidence of misrouting and fails also to disclose that defendant suffered any damage. The shipments in question originated within the corporate limits of Houston and no rail line haul was made or used as contemplated by the tariff. Moreover, the defendant cannot originate its shipments at Houston and later obtain relief on the theory that it would have originated them elsewhere had it known, or had the plaintiff told it, that the 26 cent rate was not the legal rate on shipments originating in Houston. Defendant could take nothing by being advised that the wrong rate had been quoted. The fact remains that the shipments did originate in Houston and of necessity if rice was to be moved later it could only be moved by the legal rate from that point. Therefore, the legal rate for shipments originating there must be paid. The lowest legal rate is all the defendant must pay. It cannot waive transit and thereby fail to comply with the transit tariff and obtain relief upon the ground that it could have taken transit. Furthermore, from the evidence, it is wholly conjectural as well as immaterial what the defendant might have done if the shipment from Houston had not been accepted by the plaintiff at the 26 cent rate. Manifestly, the defendant has not been damaged by failure of the carrier to quote to it the applicable rate. Atlantic Coastline Railroad Co. v. Briston Steel & Iron Works, D.C., 30 F.Supp. 726; Texas & Pacific Railway Co. v. Mugg & Dryden, 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011; Gulf, C. & S. F. Railroad Co. v. Hefley, 158 U.S. 98, 15 S.Ct. 802, 39 L.Ed. 910; Illinois Central R. Co. v. Henderson Elevator Co., 226 U.S. 441, 33 S.Ct. 176, 57 L.Ed. 290; Louisville & Nashville R. R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L. Ed. 853, L.R.A.1915E, 665.

We have given careful consideration to, but have not been able to agree with, the views of the Court of Civil Appeals in Southern Pac. Company v. Southern Rice Sales Company, supra, that the carrier's act in misquoting the rate caused legal damage to defendant for which it may recover.

We find no reversible error in the record and the judgment is affirmed.