## PETALUMA & SANTA ROSA R. CO. v. COMMODITY CREDIT CORPORATION et al.

### No. 28025.

United States District Court
N. D. California, S. D.
April 15, 1949.

A. T. Suter and E. L. Van Dellen, both of San Francisco, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., Elmer Collett, Asst. U. S. Atty. and Carl R. Schulz, all of San Francisco, Cal., for defendants.

ROCHE, Chief Judge.

This is an action to recover freight charges alleged to be due on eight wheat shipments made during the spring of 1944 from various points in Canada to defendant Poultry Producers of Central California. The wheat was purchased by defendant Commodity Credit Corporation as part of a special emergency wartime United States Government relief program. Pursuant to the purchase agreement the Canadian shipper prepaid the freight charges to the border point known as Sweetgrass, Montana, and Commodity Credit Corporation paid the charges from that point on. This litigation concerns the applicable rate from Sweetgrass to Petaluma, California, the shipments' destination.

The case was tried to the Court on stipulated facts from which the foregoing

appear. It further appears that plaintiff is a connecting line with the Great Northern Railway Company into whose hands the shipments passed at Sweetgrass and that the freight rate is governed by the provisions of Great Northern's Rules Tariff No. 1240-0, I.C.C. No. A-8071, Item No. 143, which, so far as pertinent, is as follows:

"(E) Item No. 143. Grain, Seeds, etc., Placed on Track for Inspection and Held for Disposition Orders.

"Not more than two inspections (or one inspection in addition to a diversion or reconsignment without inspection) en route and one inspection (or diversion or reconsignment) within the switching limits of the destination at which the car is unloaded will be permitted; Provided, that if, after car has received the two inspections (or one inspection and one diversion or reconsignment) en route authorized in this rule, it is subsequently inspected (or diverted or reconsigned) and reforwarded without unloading, it will be subject to the combination of tariff rates applicable on a shipment terminating at and on a shipment originating at the point at which such subsequent inspection (or diversion or reconsignment) is performed in effect on date of shipment from point of origin.

"In applying this rule, the number of stops for inspection (or diversion or reconsignments without inspection) shall be reckoned from the last point of loading of car or from the point at which it becomes subject to combination of rates as provided in this rule."

This tariff provision was made effective October 20, 1942, and was for the purpose of conserving cars and keeping traffic moving by restricting the number of inspections and diversions permitted. At the time it became effective no shipments of wheat were being transported from Canadian points to the United States and hence its applicability to shipments originating in Canada was not contemplated when the rule was framed.

By amendment effective February 16, 1949, the second paragraph of the tariff rule had added to it the phrase, "or the point where the car comes in possession of carriers within the United States." The publication announcement of this amendment bears the statement, "The above mentioned change is for clarification purposes."

The eight shipments were originally billed to defendant Commodity Credit Corporation at Ogden, Utah, for inspection and diversion but before they reached Sweetgrass, blanket instructions were issued to Great Northern Railway to divert all such shipments to Spokane, Washington, for inspection and diversion. This was done, and as each of the eight cars reached Spokane, it was inspected and diverted to Petaluma, California, where it was delivered to defendant Poultry Producers as the new consignee. Each car had also received one inspection in Canada, pursuant to requirements of the Canada Grain Act, prior to its arrival at Sweetgrass.

The question for decision is whether such Canadian inspection should be included in figuring the number of inspections and diversions each shipment was subjected to. Its inclusion would result in each shipment having two inspections and one diversion before its diversion at Spokane and thus it would become subject to the combination of rates (Sweetgrass to Spokane; Spokane to Petaluma) as having exceeded the number of inspections and diversions allowed by the tariff rule. On the other hand, if each shipment be treated as originating at Sweetgrass, the flat through rate from Sweetgrass to Petaluma would be applicable since the only inspection and diversion would be those at Spokane.

Plaintiff's original freight bills were computed at the flat rate and were duly paid by defendant Commodity Credit Corporation. Shortly thereafter Plaintiff submitted supplemental bills for additional charges based on the combination rate, on the theory that the Canadian inspection stop should be included. These supplemental charges are in dispute.

Plaintiff bases its theory on the language of the tariff rule's second paragraph, which provides that "In applying this rule, the number of stops for inspection (or diversion or reconsignments without inspection) shall be reckoned *from the last point of loading of car* or from the point

at which it becomes subject to combination of rates as provided in this rule." (Italics the Court's). Plaintiff points out that the last point of loading each car was in Canada preceding the Canadian inspection and that the rule, by its terms, thus includes such inspection.

Defendant takes the position that an American railroad's tariff rate cannot be made to depend on what happens to a shipment before it reaches the United States and that, furthermore, the amendment to the tariff rule shows that it was never contemplated that it would be applied to a situation like the present one.

█ The difficulty with defendant's first argument is that the *rate* is not affected. The tariff rule simply lays down certain requirements which must be met if the flat through rate is to be applicable. If they are not met, the combination rate applies. In neither event is the freight rate itself changed. The requirements are stated in clear, unambiguous language. The Court has no power to change them by inserting another and different requirement, even though it might seem more reasonable and equitable.

█ Defendant's second argument would have the Court apply retroactively the 1949 amendment to the tariff rule. Tariffs have the force of law and, if ambiguous, are subject to the usual rules of statutory construction. Any ambiguity should be resolved against the carrier. However, if the tariff provisions are clearly expressed, the fact that the framers may have omitted a provision later found necessary to make the tariff conform to the purpose of its framers does not render the original tariff rule ambiguous. See Southern Pacific Co. v. Rice Sales Co., Tex.Civ.App., 174 S.W.2d 1018 and cases cited therein. The Court cannot concern itself with the fact that a situation not contemplated originally arose after the rule was framed. Its duty is to apply the rule as it existed at the time of the shipments in question. When this is done it is clear that the last point of loading each car was in Canada; that each car received one inspection and one diversion after such loading and prior to its inspection at Spokane; that upon inspection and

diversion at Spokane it became subject to the combination of rates, as provided in the tariff rule. It follows, therefore, that plaintiff is entitled to the additional freight charges.

Defendant Commodity Credit Corporation's objection to the inclusion of the Canadian inspection as a stipulated fact is overruled. Defendant Poultry Producers of Central California having cross-claimed against the Commodity Credit Corporation for the amount of any judgment that might be rendered against it and the parties having stipulated that Poultry Producers of Central California is entitled to such reimbursement, it is now by the Court

Ordered that there be entered herein, upon findings of fact and conclusions of law, judgment in favor of the plaintiff and against the defendant Commodity Credit Corporation in the sum of $1,954.14, together with interest thereon at the rate provided by law, and that the respective parties pay their own costs.