**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 31, 2025**

# In the Court of Appeals of Georgia

A25A0967. UNITED GAMING LLC. v. GEORGIA LOTTERY CORPORATION et al.

BARNES, Presiding Judge.

United Gaming, LLC appeals from the trial court's order dismissing its mandamus petition seeking the enforcement of an administrative order granting the transfer of certain Coin Operated Amusement Machine ("COAM") licenses.[1] The

---

[1] COAM refers to a machine of any kind or character used by the public to provide amusement or entertainment whose operation requires the payment of or the insertion of a coin, bill, other money, token, ticket, card, or similar object and the result of whose operation depends in whole or in part upon the skill of the player, whether or not it affords an award to a successful player[.]

OCGA § 50-27-70 (b) (2) (A).

trial court granted the motion to dismiss filed by the Georgia Lottery Corporation ("GLC"), Gretchen Corbin, individually and in her official capacity as President and Chief Executive Officer, and Joseph Kim, individually and in his official capacity as General Counsel, (collectively, "GLC" unless otherwise noted) upon concluding that United Gaming had no clear legal right to processing of the transfer of the COAM licenses and had not exhausted all of its adminstrative remedies. United Gaming appeals from that order.[2] For the reasons discussed below, we affirm the trial court's dismissal.

We review de novo a trial court order granting a motion to dismiss a mandamus petition brought under OCGA § 9-11-12 (b) (6). *Hildebrand v. City of Warner Robins*, 354 Ga. App. 164, 164 (840 SE2d 503) (2020).

"The GLC ... regulates COAMs through a statutory framework set forth in OCGA §§ 16-12-35, and 50-27-70 to 50-27-104, as well as through its own set of administrative rules." *Coin Operated Solutions v. Norcross Convenience*, 357 Ga. App. 640, 641 (1) (851 SE2d 226) (2020); *Amusement Leasing v. Ga. Lottery Corp.*, 352 Ga.

---

[2] We thank World Gaming, LLC for the submission of its well-informed amicus curie brief.

App. 243, 245 (1) (834 SE2d 330) (2019) ("[T]he GLC … administers Georgia's statutory framework applicable to COAMs and COAM businesses").

Within this framework we consider the facts relevant to this appeal. In 2023, United Gaming, a COAM master licensee sought approval from the GLC to transfer two of its COAM licenses to two other companies.[3] The transfers were initially approved by a GLC attorney, but before the transfer of the licenses, Kim, the GLC's General Counsel, denied the transfer because of purported statutory prohibitions of assignments or transfers of licenses. United Gaming and the potential buyers were denied their requests for a hearing on the decision. According to Kim, the statutory hearing process did not apply to GLC "declin[ing] to approve the transfer of the two bare master licenses held by United Gaming." Kim concluded that the "COAM statutory scheme makes clear there are restrictions on the hearings subject matter," and that should a lawsuit result, then "failure to exhaust administrative remedies" would be "inapplicable." Moreover, Kim also directed that "under state law,

---

[3] "Master license" means the certificate which every owner of a bona fide coin operated amusement machine must purchase and display in the owner's or operator's place of business where the machine is located for commercial use by the public for play in order to legally operate the machine in the state. OCGA § 50-27-70 (b) (10). "Master licensee" means any person that has lawfully applied for and received a master license. OCGA § 50-27-70 (b) (10.1)

[specifically OCGA § 50-27-71 (e) (5)], master licenses are non-transferable unless they are part of the sale of the entire business." See OCGA § 50-27-71 (e) (5).[4]

Despite this, United Gaming sent a direct hearing request to a GLC hearing officer asserting that, although GLC had refused to initiate a hearing process on the transfer of the licenses, it is the hearing officer who "decides whether a hearing is proper, whether by statute or GLC Rules." Thereafter, United Gaming was granted a limited hearing to determine whether it was entitled to a administrative hearing. The administrative hearing officer expressed that while a hearing was not statutorily mandated, "pursuant to the power delegated under OCGA § 50-27-81, the hearing officer may initiate hearings 'to ensure compliance with the provisions of [the COAM

---

[4] OCGA § 50-27-71 (e) provides, in pertinent part,
A license or permit issued under this Code section: (1) Is effective for a single business entity; (2) Vests no property or right in the holder of the license or permit except to conduct the licensed or permitted business during the period the license or permit is in effect; (3) Except as provided in paragraph (5) of this subsection, is nontransferable, nonassignable by and between owners or location owners and location operators, and not subject to execution. . . .(5) As it relates to a master licensee, upon the sale of a master licensee's business in its entirety, the buyer shall pay to the corporation a transfer fee for the master license that accompanies the business[.]

statutes] or to determine whether violations exist.' Thus, the hearing officer must determine whether a hearing, while not required, may nevertheless be appropriate under the facts presented."[5] See OCGA § 50-27-102 (d) (2) ("All disputes subject to the provisions of this Code section certified by a master licensee, location owner, or location operator shall be decided by a hearing officer approved or appointed by [the GLC].") However, the hearing officer indicated that, notwithstanding the granting of a hearing, it was unclear whether a hearing officer would thereafter have authority to grant substantive relief on the underlying complaint.

GLC corresponded with the hearing officer as to its opposition to the hearing and informed the officer that GLC would not "participate in and ratify any GLC administrative hearing process with respect to this matter." Despite the GLC's

---

[5] The hearing officer noted that while United Gaming was basing its hearing request on OCGA § 50-27-73 (d), the "statute only requires a hearing to 'ascertain whether a licensee or applicant for a license has engaged in conduct which would be grounds for revocation, suspension, or refusal to issue or renew or issue a license.'" It further found unpersuasive United Gaming's contentions that the underlying issue fell "within the scope of OCGA § 50-27-74 (a), which mandates hearings where an application for an original or renewal licenses had been denied, a license will be revoked, or sanctions will be imposed." Likewise, the hearing officer was unpersuaded by United Gaming's contention that a hearing was required pursuant to GLC Rule 13.2.1 (3), "which, following United Gaming's argument to its logical conclusion, would give any party the right to a hearing under any circumstances at any time."

opposition, the hearing officer conducted a preliminary hearing concerning whether under the GLC's statutory framework and rules, United Gaming and the purchasing companies were entitled to a hearing on the merits. Following the hearing, the hearing officer concluded that United Gaming was entitled to a substantive hearing on the merits regarding the denial of the transfer of the licenses, specifically on whether the GLC's denial of the applications is "based on a misinterpretation of Georgia law and violates equal protection."

After the ensuing hearing on the merits, at which the GLC again did not participate and indicated by correspondence that it would not "ratify the actions of [the] hearing officer," the hearing officer entered an order directing the transfer of the two licenses. The hearing officer considered testimony that GLC on various occasion had approved similar transfers of a "bare" license although the licensee retained its business. United Gaming's general counsel testified that as recently as 2023, the GLC had permitted United Gaming to sell a bare license and retain all of its other master licenses. Another industry witness testified that he had never understood OCGA § 50-27-71 (e) (5) to require that a licensee's business be sold in its entirety, and had aided in the sale of multiple bare licenses, with GLC's consent.

Finding in favor of the transfer, the hearing officer ordered that GLC complete the processing of the transfers of the two bare licenses within 30 days of the entry of the order. In considering GLC's position that OCGA § 50-27-71 (e) (5) requires the sale of the entirety of the business conducted by the entity desiring to transfer a license, the hearing officer found that

> the phrase "master licensee's business in its entirety" in OCGA § 50-27-71 (e) (5) means the entirety of the business conducted *under* the master license being transferred, rather than entirety of the business conducted by the entity or individual holding the master license. As a preliminary matter, the plain language of the statute contemplates the transfer of a single master license, rather than all of the master licenses held by an entity or individual. ... Had the General Assembly intended to require that an entity or individual holding several licenses be required to transfer all of those licenses at one time, it could have said so, but did not.

(Emphasis supplied).

The GLC refused to comply with the order, instead responding that "[b]ecause this matter has always been subject to judicial review in the ordinary course by the Fulton County Superior Court [before the hearing], the GLC will take no action based on the non-judicial proceedings that were conducted in lieu of going to the Superior

7

Court." United Gaming filed the subject mandamus petition in Fulton County Superior Court seeking to enforce the administrative order. The GLC moved to dismiss, arguing that (1) the transfer of the licenses was statutorily prohibited and (2) mandamus was not appropriate because United Gaming had an adequate remedy to review the GLC's denial of the transfer.

The superior court granted GLC's motion to dismiss. The court considered whether the Georgia Lottery, and Corbin and Kim, individually and respectively the Lottery's CEO and General Counsel, had failed to perform a clear legal duty, and whether United Gaming was required to utilize an alternative legal remedy. In considering the clear legal duty, the trial court found that the mandamus petition was subject to summary denial because the legislature had designated that the operation of a COAM business was a privilege rather than a right per OCGA § 50-27-70 (a), and mandamus does not apply to a public officer where the action is a privilege rather than a right. *Allen v. Carter*, 226 Ga. 727, 727 (177 SE2d 245) (1970).

The trial court further held that per the clear language of OCGA § 50-27-71 (e) (3), the COAM licenses were "nontransferable [and] nonassignable" absent the sale of the licensee's business. Alternatively, the trial court concluded, even assuming that

United Gaming had a clear legal right to transfer or assign the COAM licenses, dismissal was still mandated because United Gaming has an alternative legal remedy and had failed to exhaust these legal remedies. According to the trial court, "[t]o the extent [United Gaming] was aggrieved by [the Georgia Lottery respondents'] refusal to process the subject transfers, United Gaming was required to seek judicial review." United Gaming appeals from that order.

> Mandamus is an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy. The writ of mandamus is properly issued only if (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief. Further, for mandamus to issue, the law must not only authorize the act to be done, but must require its performance. Where performance is required by law, a clear legal right to relief will exist either where the official or agency fails entirely to act or where, in taking such required action, the official or agency commits a gross abuse of discretion. Mandamus shall not lie as to a public officer who has an absolute discretion to act or not to act unless there is a gross abuse of such discretion.

(Citations and punctuation omitted.) *Love v. Fulton County Bd. of Tax Assessors*, 311 Ga. 682, 692-693 (3) (a) (859 SE2d 33) (2021). See OCGA § 9-6-20 ("All official duties should be faithfully performed, and whenever, from any cause, a defect of legal

justice would ensue from a failure to perform or from improper performance, the writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights"). "[T]he burden is upon the party seeking mandamus to show the existence of such a duty." *Forsyth County v. White*, 272 Ga. 619, 620 (2) (532 SE2d 392) (2000).

1. United Gaming asserts that, contrary to the trial court's finding, its exclusive remedy was mandamus because there was no other adequate legal remedy when Kim refused to comply with the administrative order approving the transfer of the licenses. We do not agree.

"[T]he writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights … ."OCGA § 9-6-20. "An adequate remedy at law is defined as a legal remedy that provides sufficient relief to the petitioning party, thus preventing the party from obtaining equitable relief." *Ga. Lottery Corp. v. 1100 Shorter Dollar*, 351 Ga. App. 688, 689 (832 SE2d 665) (2019) (citation and punctuation omitted). The General Assembly has authorized the GLC to adopt rules and regulations "for the regulation of its affairs and the conduct of its business," OCGA § 50-27-9 (a) (3), and, more specifically, for the enforcement of the

COAM laws, OCGA § 50-27-81 (b). Within the enforcement of its laws, the GLC has authority to create its own intra-agency appeal process. OCGA § 50-27-74.

Relevant to this case, OCGA § 50–27–76 (a) provides that an "[a]ppeal by an affected person from *all actions* of the corporation or chief executive officer shall be to the Superior Court of Fulton County. The review shall be conducted by the court and shall be confined to the record." The statute further directs that the trial court review these actions to determine "if substantial rights of the appellant have been prejudiced because [GLC's] findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of [GLC];

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 50-27-76 (a) (1)-(6).

Here, when the GLC allegedly arbitrarily recanted its approval of United Gaming's transfer of the two licenses, United Gaming was subject to a *decision* by the GLC that was ripe for judicial review per OCGA § 50-27-76 (a). There is no authority statutorily or in the GLC's rules authorizing United Gaming to thereafter seek review of the GLC's action from a hearing officer. Moreover, pretermitting the hearing officer's authority to review GLC's refusal to hold a hearing or issue a decision ordering GLC to transfer the licenses, when GLC refused to comply with the order entered by the hearing officer, its noncompliance was likewise subject to judicial review. The GLC Rules regarding the post-hearing appeal procedure provide that after a hearing officer issues an executive order applying the COAM laws, an aggrieved party seeking relief must follow a two-step appeal procedure within the GLC that involves requesting reconsideration from the hearing officer and then moving for review by GLC's president/CEO. GLC Rule 13.2.5.[6] Given this statutory

---

[6] GLC Rule 13.2.5 (1) (b) (4) further states that a "Motion for Review shall be deemed denied if the President/CEO or his/her designee fails to provide a decision to either grant or deny the Motion [for] Review within 30 days from receipt of the Motion for Review." See *Ultra Group of Companies,. v. Inam Intl.*, 354 Ga. App. 304, 304 (840 SE2d 708) (2020) (noting that "[a]fter the [GLC] CEO failed to take any action within 30 days, Ultra filed a petition for certiorari in the Fulton County

and regulatory scheme, and the inherent conflict created when GLC is charged with the review of its own adverse decisions, vesting this authority in the superior court, we presume, was a well considered choice by the legislature.

2. Because we find that the trial court did not err in dismissing the mandamus action, we need not address United Gaming's remaining enumerations.

*Judgment affirmed. Brown, C. J., and Watkins, J., concur.*

---

Superior Court"); *Coin-Op Solutions*, 360 Ga. App. at 48 n.15 ("CEO's automatic denial … was a GLC action reviewable by the superior court[.]").